A95A0682, A95A0683. OCHLE v. THE STATE (two cases).
(459 SE2d 560)

BIRDSONG, Presiding Judge.

Woody Ochle appeals his convictions for four counts of abusive words and two counts of sexual battery and his convictions for aggravated assault, aggravated battery, and making a false statement. The charges arose out of Ochle's sexual remarks to and contact with fellow female high school students and his fight with the boyfriend of one of those victims. The charges were tried separately on two successive days.

Appellant gave notice of intent to introduce evidence of a specific act of violence by the aggravated assault victim, Todd Stewart, under Superior Court Rule 31.6, to wit, that at a basketball game Stewart challenged a boy to a fight, pulled out a knife and said he was cleaning his fingernails. The boy's friends dissuaded him from fighting. The evidence was offered to show Stewart's tendency to violence and that he had a knife on school property. The trial court disallowed the evidence because there was no actual fight.

At the aggravated assault trial, a victim of the abusive words offenses, Elisha Roper, testified she reported them to her boyfriend, Todd Stewart; after her basketball game on December 3, 1993, she and Stewart watched the boys' game in which appellant hurt his ankle; she rode the bus back as did appellant; when she got in Stewart's truck he said he would confront appellant; he did so as appellant was getting in his car; Stewart "reached in [Woody's] car and . . . [Woody] come out the other side and around the back of the car and they started to fight"; when appellant came around the car, Stewart "was at the back of the car"; they met at the back of the car and started to fight; appellant hit Stewart about three times, then dropped a pipe. Roper showed how appellant swung the pipe and testified Stewart had his head in appellant's chest, and she testified that appellant came to the hospital to see Todd Stewart after the fight. As to what occurred at the hospital, the prosecutor then asked Roper: "Did [appellant] say anything about that particular case? . . . What did he say?" She replied: "He said that about the pipe, he said that

he needed to get rid of it. That he had been in court too many times before." Counsel moved for a mistrial, saying this was highly prejudicial as a 17-year-old kid has no business in court except on criminal charges and the jurors were in court when a jury was picked to try appellant on other charges. The trial court told the jury to disregard "certain statements the defendant made to [Roper]." On cross-examination, Roper admitted Stewart reached in the car with both hands to grab appellant; "he looked [like] he was falling in"; appellant "jumped out the other side, so I guess [he was trying to get away]."

Todd Stewart testified he knew there was a possibility of a fight when he went to appellant's car; he grabbed appellant's car door and would not let him close it; he asked appellant what he had said to Elisha; appellant "told me I had better leave him alone, that he had something for me"; appellant reached in the floor board and "I didn't know what he had, so it scared me and I grabbed him . . . by the arm [and] I had a hold of his jacket. . . . And he raised up and I seen the pipe"; "[appellant] started crawling through the car and he . . . went out the passenger side and run around the back of the car and I was kind of leaned over in the car and I raised up and turned around and took a step and he swung the pipe"; when Stewart took a step, appellant was "right there on me"; Stewart may have hit appellant once or twice before the fight was broken up. On cross-examination Stewart said that when appellant told him to leave him alone, Stewart did not do so because "I . . . was mad [and ready to fight]."

A police officer testified appellant at first denied he had a pipe. A coach who had been appellant's guardian testified he went to the hospital with appellant to see Stewart; appellant offered to apologize; appellant had a badly sprained ankle. Kerry Hayes testified "Todd [Stewart] started [the fight]"; Hayes was getting in appellant's car when "Todd came to [appellant's] side of the car and he was holding [appellant's] hands down. . . . Todd [asked appellant] what he said to his girlfriend, and [appellant] said 'I didn't say nothing about her'. . . Todd was holding his hands down and I got out of the car"; he "saw [Todd] grab [appellant's] hands, and they were struggling"; Stewart and appellant met at the back of the car; appellant had hurt his ankle and was limping with one shoe off; Stewart came at appellant "with his fists drawn" and "like they was fixing to fight."

Appellant defended by saying the female victims reported abusive words and contact only after his fight with Stewart. Appellant testified he was injured at the game and had to hop to his car; he had a bag of ice and another bag over one shoulder; he was shutting the car door when Stewart came over; he told Stewart he had said nothing about his girl friend, did not want any trouble and just wanted to go home, and Stewart proceeded to come in his car; Stewart had hold of appellant's jacket and was striking him with his fist; appellant went

across his console to get away; a dumbbell bar was in the floor board and appellant picked it up; Stewart was older and bigger than he was and he felt trapped; Stewart met him at the back of the car and came at him with his fists; Stewart had hold of appellant the whole time; appellant dropped the pipe after he hit Stewart but Stewart continued to fight.

A witness, Dustin Mullins, saw Stewart go to appellant's car and "grab [appellant's] hands, hold them down, exchange words"; Stewart put his hand on appellant's throat and they scuffled; punches were thrown while appellant was sitting in his car; when they met at the back of the car both were swinging. This witness's father testified he saw Stewart at appellant's window; he saw fists, arms and hands flying inside the car; he saw appellant get out of his car and strike Stewart three or four times with the pipe; he broke up the fight and told appellant to move away; Stewart was still trying to fight. *Held:*

## Case No. A95A0682

1. The State produced four girls who testified appellant made vulgar and obscene remarks to them in the nature of wanting to have sexual intercourse, and that he grabbed or pressed himself against two of these victims in a sexual manner. Although appellant contended these victims lied, the evidence was sufficient to persuade a rational trier of fact of appellant's guilt of the offenses of abusive words and sexual battery under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. The trial court did not err in denying appellant's motion to make time an essential element of the offenses. The exact date of those offenses was not a material allegation. See *Eberhardt v. State*, 257 Ga. 420 (359 SE2d 908).

3. Appellant contends the trial court erred in denying his motion for change of venue. He appends to his brief an article from a local newspaper concerning the arrest of Woody Ochle, a 17-year-old Pickens High School student, for aggravated assault "after he allegedly struck 19-year-old Todd Stewart in the head with [an] iron pipe. . . . The incident has resulted in an outpouring of community concern over violence in the schools. . . . [One mother] expressed the sentiments of many in the community when she said, 'It's outrageous that a student just charged with a serious felony be allowed to . . . participate in school activities.' Supt. Kimsey Wood said . . . this incident has stirred more public concern than any other local issue he's seen in a long time." Appellant also appends to his brief an editorial letter saying: "[A basketball player] got into a fight on school property [Friday night]. . . . [I]t has been alleged that the student used a metal pipe. . . . [S]tudents throughout the state are arming themselves,

whether with a pipe, brass knuckles, a knife, or a gun." Another editorial letter appended to appellant's brief states: "A Pickens County High basketball player was arrested for felony assault. . . . This is not the first time this individual has been in trouble involving a deadly weapon."

We do not take our evidence from briefs or go outside the record (*Cotton States Mut. Ins. Co. v. Bogan*, 194 Ga. App. 824, 826 (392 SE2d 33)), and we do not rule on issues not raised in the trial court. These news articles were not presented to the trial court. Assuming this would be a case suitable for change of venue (see *Jones v. State*, 261 Ga. 665 (409 SE2d 642)), appellant made no "substantive showing of the likelihood of prejudice by reason of extensive publicity." *Jones*, supra at 666 (2) (b).

## Case No. A95A0683

4. In the trial for aggravated assault and related charges, the trial court erred in denying a mistrial for the injection of character. See OCGA § 24-9-20 (b). Motions for mistrial are generally in the discretion of the trial judge, and especially where the cause is a voluntary remark of a witness uninvited by counsel, where the jury is properly instructed and the remark is not so flagrantly prejudicial as to violate the defendant's fair trial rights, the court's discretion will not be overturned. *Collins v. State*, 180 Ga. App. 220, 221 (348 SE2d 590); see *Owens v. State*, 204 Ga. App. 579 (1) (420 SE2d 79).

The trial court concluded that unresponsive statements by law enforcement officers are dealt with more sternly than unresponsive answers by laypersons (see *Boyd v. State*, 146 Ga. App. 359 (246 SE2d 396)), but application of this concept to this case was error because Elisha Roper's statement was *not unresponsive*. The prosecutor's query was answered exactly as made. The exchange indicates Roper and the prosecutor had discussed "*that about the pipe*" as well as whatever else appellant may have said. (Emphasis supplied.) It should have been anticipated that when asked what appellant said to her, Roper would volunteer all of what he allegedly said. The witness was evidently not instructed not to volunteer that appellant said he had been in court "too many times before," and her reply does not appear inadvertent. See *Boyd v. State*, supra at 359-360, where we said: "[I]f we refuse to reverse this judgment, then we provide no incentive to district attorneys and solicitors to counsel their witnesses . . . to avoid extraneous and inadmissible outbursts." Moreover, Roper did not say merely that appellant had been in court before, as in *Cherry v. State*, 220 Ga. 695, 696-697 (141 SE2d 412), but that he had been in court "too many times before." This was highly prejudicial in all the circumstances of trial. Moreover, the trial court told the

jury to disregard "certain statements the defendant made" which implied the statements were actually made by appellant.

Appellant's alleged statement was not res gestae to anything, as it was made at the hospital some time after the fight.

The evidence against appellant on the charge of aggravated assault was not overwhelming and did not demand the verdict. Confronted with undisputed evidence that Stewart attacked appellant while he sat in his car with an injured ankle, with Stewart's own testimony that appellant told him to leave him alone but Stewart did not do so because he was mad and ready to fight, and with the overwhelming evidence that Stewart met appellant at the rear of the car, which was contradicted only by Stewart's testimony, the jury might have reached a different verdict had it not been told appellant had been in court "too many times before." See *Hamilton v. State*, 239 Ga. 72, 77 (235 SE2d 515); *Cauley v. State*, 130 Ga. App. 278, 286-293 (203 SE2d 239).

5. It was error to exclude evidence of a specific act of violence by the victim on grounds merely that the actual fight challenged by him did not occur. The evidence showed the fight was averted because the witness's friends prevented it, not because Stewart refrained. The rule allowing evidence of specific "acts of violence" of a victim emerged from Justice Weltner's special concurrence in *Lolley v. State*, 259 Ga. 605, 608 (385 SE2d 285) (see *Chandler v. State*, 261 Ga. 402, 407 (405 SE2d 669)); Justice Weltner's hypotheticals are similar to the most damning element of this case: that Stewart was without a weapon. The admissibility of such evidence is based not so much on an act of actual violence as on the victim's "character for violence," his "violent nature," or his tendency to " 'act in accordance with his character' " as it relates to the defendant's justification. *Lolley* at 608-609 (3). The victim's tendency to provoke violence may be as relevant to a defense of justification as his tendency to engage in actual violence. Provocation of violence may be an "act of violence." We note further that it is not essential that the specific act occurred prior to the act being tried. See Judge Carley's special concurrence in *Daniel v. State*, 205 Ga. App. 737, 738 (423 SE2d 432); see also *Moore v. Thompson*, 255 Ga. 236 (336 SE2d 749). If there was doubt as to admissibility of the evidence, it was better admitted and its weight and credibility left to the jury. *Sabree v. State*, 195 Ga. App. 135, 137-138 (392 SE2d 886). This is especially true where such evidence provides a clue to motives of the accuser (see, e.g., *Mulkey v. State*, 155 Ga. App. 304 (270 SE2d 816)) or the defendant in a criminal case. *Lolley*, supra.

6. As a new trial must be granted on the aggravated assault and related charges, it is unnecessary to address the issues relating to pretrial publicity as raised in this trial.

*Judgment affirmed in Case No. A95A0682. Judgment reversed in*

*Case No. A95A0683. Johnson and Smith, JJ., concur.*

Decided May 31, 1995 —
Reconsideration denied July 24, 1995 —

*Richard Thurman*, for appellant.
*Roger G. Queen*, District Attorney, *William B. Britt*, Assistant District Attorney, for appellee.