A95A1659. STATEN v. THE STATE.
(466 SE2d 20)

RUFFIN, Judge.

During a two-week period in January 1994, Anthony Staten and his co-defendant robbed or attempted to rob five retail establishments in DeKalb County. Staten was indicted for robbery and aggravated assault in connection with three of the incidents, and the other two incidents were admitted as similar transactions at trial. Staten was convicted by a jury of all three counts. He appeals the judgment of conviction following the denial of his motion for new trial. For reasons which follow, we affirm.

Viewed in the light most favorable to support the jury's verdict, the evidence showed that shortly after midnight on January 26, 1994, a police officer pulled over a Pontiac 6000 with tag number CAC779 because the car had been reported stolen by Staten's wife, Patricia Staten. Staten was the driver, and the officer released him because both he and his wife were registered owners of the car. Later that day, Staten's co-defendant entered a Starvin Marvin convenience store, approached the counter to pay for a pack of cigarettes, grabbed the cash drawer, and ran out the door. The clerk saw the getaway car and told police its tag number was CAC779. On January 27, the co-defendant entered a Thriftown grocery store, approached the clerk with a package of gum, snatched money from the cash register, and ran. The store owner followed the robber and saw him enter the passenger side of a Pontiac 6000. A witness reported the car's tag number as CAC977 or CAC979. On January 30, the co-defendant entered a

Mountain Farms gas station and convenience store, demanded money from the clerk, grabbed the cash register, and ran outside to an awaiting car with tag number CAC779. On February 1, Staten and his co-defendant took a cab together to an Ingles grocery store, exited the cab, and proceeded individually to commit two attempted robberies of a dry cleaner and a package store. Responding to calls from these locations, police arrested the pair in the cab shortly thereafter. After his arrest, Staten gave a statement to police in which he admitted he was driving the car involved in the Thriftown incident.

1. Staten contends the trial court erred in admitting similar transaction evidence which he argues violated Uniform Superior Court Rule 31.3. We disagree. The trial transcript demonstrates that the State sought to introduce as evidence of the similar transactions, the Starvin Marvin and Mountain Farms robberies, in connection with Count 1 of the indictment for the Thriftown robbery.

Evidence of independent crimes is admissible "if the state makes three showings: (1) that the evidence is offered, not to raise an improper inference regarding the character of the defendant, but for a proper purpose; (2) that there is sufficient evidence that the defendant committed the independent act; and (3) that there is sufficient similarity between the independent act and the charged offense to demonstrate that the independent act is logically relevant to a material issue in dispute in the trial. See *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991)." *Mitchell v. State*, 265 Ga. 71, 72 (2) (453 SE2d 731) (1995).

With respect to the first requirement, the trial court determined that evidence of the independent crimes was sufficiently similar to show a common modus operandi, a "legitimate purpose for proof of the independent crimes . . ." and that the State's intent was not to impeach Staten's character. *Slater v. State*, 209 Ga. App. 723, 725 (2) (434 SE2d 547) (1993).

We are likewise satisfied that the State offered sufficient proof that Staten was a party to the independent crimes, despite the fact that the getaway driver was not identified at either incident. Staten was pulled over in his wife's car on January 26 and admitted he was driving the car at the Thriftown robbery on January 27. The car's tag number was given by witnesses at both the Starvin Marvin robbery on January 26 and the Mountain Farms robbery on January 30. "Even where the defendant is not identified positively as the perpetrator of the independent crime, circumstantial proof may be used to establish his connection to it. [Cit.]" *Martin v. State*, 198 Ga. App. 488, 489 (402 SE2d 95) (1991). Nor, as Staten argues, does the fact that four days elapsed between the time Staten was pulled over by police and the Mountain Farms robbery render the prior crimes inadmissible. See *Leonard v. State*, 197 Ga. App. 221 (2) (398 SE2d 250)

(1990).

Finally, given the evidence discussed above regarding the nature and modus operandi of the crimes, there was sufficient similarity between the similar transactions and the Thriftown robbery such that proof of the former tended to prove the latter. *Williams*, supra. Thus, the trial court did not err in admitting evidence of the other crimes.

2. Staten contends the court erred in denying his motion for mistrial when, after being alone with Staten in the courtroom during a break, one of the State's witnesses changed his initial testimony that he did not see the perpetrator of an attempted robbery in the courtroom. Staten argues that because he was the only African-American man in the courtroom during the break, the subsequent identification was impermissibly suggestive. We disagree.

The witness explained that when he first stated he did not see the suspect in the courtroom, it was because he was expecting to see an individual in chains and a prison uniform as is the custom in his native country of Ethiopia; instead, he saw only people in street clothes. The witness further testified that he was "shocked" when he ultimately recognized Staten because Staten was wearing a suit and tie. The witness also testified that when first asked whether he saw the perpetrator, he was looking directly at the prosecutor rather than around the room. During the break, however, he had a chance to look directly at Staten and recognized him as the perpetrator. An "in-court identification is not inadmissible unless, under the totality of the circumstances, there is a substantial likelihood of irreparable misidentification." (Citation omitted.) *Perkins v. State*, 216 Ga. App. 118, 119 (1) (453 SE2d 135) (1995).

In this case the witness testified that he was absolutely certain Staten was the man who attacked him; that he had a clear view of the perpetrator at the time of the attempted robbery; and that he observed the man face-to-face. In addition, the witness testified that he identified Staten in a pre-trial photographic lineup. The court then permitted Staten's attorney to cross-examine the witness regarding the circumstances of his in-court identification and fully charged the jury regarding identification and factors the jury should consider in assessing the reliability of an identification. Under the totality of these circumstances, we are satisfied that the identification procedure was not so impermissibly suggestive that it gave rise to a very substantial likelihood of misidentification. *Hamilton v. State*, 210 Ga. App. 19 (1) (435 SE2d 61) (1993). (On the morning of trial, a police officer showed the witness a picture of the defendant prior to the witness's in-court identification.)

3. Staten contends the court's admission of the written statement he gave following his arrest in which he stated, "I have been doing drugs for 14 days," improperly placed his character in evidence.

Staten testified that at the time of his arrest on February 1, he had been on a two-week long crack cocaine binge during which he smoked the drug twenty-four hours a day. The detective to whom Staten gave an oral statement testified that Staten confessed he and his co-defendant picked the Thriftown because it "would be an easy hit" and that they "got some money out of it and bought some cocaine."

Evidence relevant to motive in a case is not rendered inadmissible "simply because it incidentally puts a defendant's character . . . into evidence." (Citations and punctuation omitted.) *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992). In this case, the statement had independent relevance to establish that Staten had a motive — obtaining money to continue the crack cocaine binge — for participating in the robberies. Staten's oral confession that they used the money from Thriftown to buy cocaine was thus corroborative. As such, the written statement was admissible to show motive.

*Judgment affirmed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED NOVEMBER 28, 1995 —
RECONSIDERATION DENIED DECEMBER 19, 1995 — 

*Lauris J. Geheren*, for appellant.
Anthony Staten, *pro se*.
*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.