## A04A1365. THOMAS v. THE STATE.
(606 SE2d 275)

PHIPPS, Judge.

At the first stage of a bifurcated trial, Eric Lamar Thomas was convicted of two counts of aggravated assault on a peace officer and one count each of obstruction of an officer and theft by receiving stolen property; at the second stage, he pled guilty to possession of a firearm by a convicted felon. He appeals, challenging the sufficiency of the evidence to support the verdict and the admission of evidence reflecting adversely on his character. Although we do not find that any evidence was improperly admitted, we do find that two of Thomas's convictions are not supported by the evidence. Therefore, Thomas's convictions are affirmed in part and reversed in part.

On the evening in question, Warner Robins Police Sergeant Scott Webb responded to a complaint of loitering. When Webb arrived on the scene, he observed Thomas running in his direction. Webb saw an object in Thomas's hand that looked like a gun, so he drew his pistol, identified himself as a police officer, and called out several times for Thomas to stop. Thomas, however, continued to run. Webb chased Thomas from one street to another between various houses. When Thomas came to a chain link fence, Webb ordered him to drop his weapon and get on the ground. Instead, Thomas pulled himself over the fence. As he was falling to the ground, Webb heard a gunshot but could not tell whether it had been aimed at him. Webb also climbed over the fence and continued to pursue Thomas. With the aid of other officers, including Warner Robins Police Lieutenant William Capps, Webb chased Thomas to another fence over which Thomas also leapt. After Thomas hit the ground, he fired another gunshot. Capps testified that Thomas fired that gunshot at him.

Thomas then ran to a house and crawled into a hole leading to a space under the house. Law enforcement officers secured the area. Warner Robins Police Colonel Thomas Bachelor tried to engage Thomas in conversation but he would not respond. Capps testified that after Thomas fired another gunshot from under the house, he sprayed pepper spray into the hole. After Thomas fired more shots, Bachelor authorized the officers to return fire. Thomas then emerged from under the house with a gun in his hand and a bullet wound to his arm. Upon being ordered to drop the gun, he did so.

The gun in Thomas's possession was a .22 caliber semi-automatic Browning pistol. Spent shell casings matching the pistol were found under and in the vicinity of the house. State's witness Sanford Kasey identified the pistol as one that had been stolen from his home.

Thomas testified in his own defense. He claimed that the gun in his possession had discharged accidentally after he had thrown it over the first fence he had scaled and that he had not otherwise fired

it. He testified that he bought the gun on the street for $120, and that he did not know the person from whom he bought the gun or that the gun was stolen.

1. One of Thomas's aggravated assault convictions, and his conviction of theft by receiving stolen property, are not supported by the evidence.

(a) Thomas was convicted of aggravated assault with a deadly weapon on Officers Webb and Capps. To obtain a conviction for each offense, the state had to show that Thomas had attempted to commit a violent injury to each officer or that he had placed each of them in reasonable apprehension of immediately receiving a violent injury.[1] Clearly, the evidence was sufficient to show that Thomas committed an aggravated assault on Capps. Capps testified that Thomas shot at him at least twice. Warner Robins Police Officer Robert McKamy, who was not named in the indictment, also testified that Thomas shot at him and that he feared for his life as a result. Webb, however, never testified that Thomas shot at him, either during the chase or after he had crawled under the house. Webb did testify that he heard Thomas's gun being fired as he was climbing over the fence. However, he further testified that he did not know whether it was aimed at him, and he acknowledged that the weapon could have been accidentally discharged. Thus, the conviction of aggravated assault on Webb was not supported by the evidence and must be reversed.

(b) Thomas's conviction of theft by receiving stolen property was based on his possession of the .22 caliber pistol stolen from Kasey. "A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner."[2] Knowledge that goods are stolen is thus an essential element of the crime of receiving stolen goods and must be proved, although it may be inferred "where the circumstances would excite suspicion in the minds of ordinarily prudent persons."[3] Here, the only evidence of this crime presented to the jury at the first stage of Thomas's bifurcated trial was that he had purchased the pistol for $120 from someone he did not know. The state did not show that those circumstances were sufficient in and of themselves to excite suspicion in the mind of an ordinarily prudent person that the gun was stolen.[4] This conviction too must be reversed.

---

[1] See OCGA §§ 16-5-20 (a) (1), (2); 16-5-21 (a) (2).

[2] OCGA § 16-8-7 (a).

[3] (Citation and punctuation omitted.) *Graham v. State*, 236 Ga. App. 673, 675-676 (2) (a) (512 SE2d 921) (1999).

[4] Compare *Brown v. State*, 265 Ga. App. 613, 614 (1) (594 SE2d 770) (2004) (buying at price grossly less than real value sufficient to excite suspicion); *Dunbar v. State*, 228 Ga. App. 104,

(c) Thomas was convicted of obstruction of an officer for fleeing from Webb and refusing to obey his commands to stop. The evidence was amply sufficient to support that conviction, and it is affirmed.

2. Thomas contends that the trial court erred in admitting certain writings found in his possession at the time of his arrest because they improperly placed his character in issue. Thomas argues that even if this evidence was relevant, its prejudice to him outweighed its probative value to the state.

The writings were song lyrics that Thomas had composed and there was no evidence that he intended them to be anything else. However, the jury was authorized to find that in the lyrics Thomas had alluded to some violent encounter with police officers.[5] Because this documentary evidence arguably suggested Thomas might be inclined to engage in some violent encounter with police officers, it would not be inadmissible because it incidentally placed his character in evidence.[6] Whether the evidence's prejudice outweighed its probative value was a matter addressing itself to the discretion of the trial court.[7] We find no abuse of discretion by the trial court in admitting the evidence.

3. Thomas also contends that the court erred in refusing to declare a mistrial after he admitted that he was on probation in response to questioning by the state.

On cross-examination of Thomas, the prosecuting attorney asked why he had run from the police. Thomas responded that he was on probation. In reliance on *Ochle v. State*,[8] Thomas argues that a mistrial was demanded. We disagree. In *Ochle*, the prosecuting attorney posed a question to a state's witness intended to elicit an inadmissible response. Here, Thomas's response was not inadmissible. If he, indeed, ran from the police because he was on probation, that showed his motive for obstructing an officer. As noted earlier, evidence relevant to motive is not rendered inadmissible because it incidentally places the defendant's character in evidence. Moreover, when asked on direct examination why he had run from the police,

---

107 (1) (b) (491 SE2d 166) (1997) (buying damaged car without key would excite suspicion); *Leachman v. State*, 226 Ga. App. 98 (485 SE2d 587) (1997) (buyer of firearms convicted of theft by receiving where bill of sale contained obviously false documentation and buyer immediately disposed of firearms by selling them at a loss).

[5] Among other things, Thomas wrote: "Cops chase, but I race." "It's fatal and I ain't stable, meaning I ain't able to be responsible for all the crazy shit I'm capable of doing. . . ." "It's me against them, them against me, police and the chief, D-E-A-D for him and huh, I be low key like mammals in the sea, so."

[6] *Staten v. State*, 219 Ga. App. 536, 539 (3) (466 SE2d 20) (1995); compare *Maxwell v. State*, 262 Ga. 73, 75 (3) (414 SE2d 470) (1992), rev'd on other grounds, *Wall v. State*, 269 Ga. 506, 507-510 (2) (500 SE2d 904) (1998).

[7] See generally *Agony v. State*, 226 Ga. App. 330, 332 (3) (486 SE2d 625) (1997).

[8] 218 Ga. App. 69 (459 SE2d 560) (1995).

Thomas responded that he was in possession of a weapon. When asked again on cross-examination, his response was that he was on probation. Therefore, the question posed on cross-examination was not necessarily intended to elicit the response Thomas gave. Under the circumstances, Thomas voluntarily put his character in evidence by the statement.[9]

*Judgment affirmed in part and reversed in part. Smith, C. J., and Johnson, P. J., concur.*

DECIDED OCTOBER 26, 2004.

*Rodney E. Davis*, for appellant.

*Kelly R. Burke, District Attorney, Amy E. Smith, Assistant District Attorney*, for appellee.

---

[9] See *Brown v. State*, 242 Ga. 602, 603 (3) (250 SE2d 491) (1978).
[1] (Emphasis supplied.)