**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**June 5, 2020**

# In the Court of Appeals of Georgia

A20A0744. MCMURRAY v. THE STATE.

BROWN, Judge.

Following a combined motion to suppress hearing and stipulated bench trial, Shannon McMurray was convicted of possession of a controlled substance with intent to distribute, possession of marijuana with intent to distribute, theft by receiving stolen property, and possession of a firearm by a convicted felon. He appeals his convictions, arguing that the trial court erred in denying his motion to suppress and that insufficient evidence supports his conviction for theft by receiving stolen property. For the reasons that follow, we reverse McMurray's conviction for theft by receiving stolen property, but affirm his remaining convictions.

On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's verdict, and the defendant no longer enjoys the presumption of innocence. We

do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence; our role is to determine whether the evidence presented is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt.

(Citation and punctuation omitted.) *Bell v. State*, 349 Ga. App. 621 (824 SE2d 552) (2019). So construed, the evidence shows that McMurray rented a room at an extended stay hotel from December 16 until December 31, 2013. During this period, the hotel's manager noticed a strong odor of marijuana in the hotel's interior hallway, coming from the vicinity of rooms 121, 122, and 123. Eventually, the manager determined that the odor was emanating from room 121, which was registered to McMurray. In addition to the odor, the manager observed various people "coming in and out of the room" every few hours, which "raised a flag."

On December 27, the manager contacted police, requesting that they remove McMurray from the hotel because she believed he was involved in drug activity. Two officers responded to the call, and the manager took them to McMurray's room. The officers also smelled the odor of marijuana in the interior hallway and through the door of room 121. After no one answered knocks on the door, the manager — without prompting from the officers — opened the door with her master key and entered the room while the officers remained outside the doorway. One of the responding officers

2

testified at McMurray's trial and denied seeing anything drug-related inside the room. The manager also testified that she did not see any drugs while she was inside the room. However, the report from the incident included the note that "there was observed two blunts inside the room in plain view." It is unclear from where this information originated and who, if any one, saw blunts inside the room. The officers left the hotel, and the testifying officer relayed the incident to an investigator. The investigator testified that this officer told him that "rolled marijuana cigarettes had been observed inside the room."

After receiving this information, the investigator ran a criminal background check on McMurray and learned that he was a convicted felon with prior drug and firearm charges. On December 28, the investigator went to the hotel, noticed the odor of marijuana in the hallway, and confirmed that the odor was coming from room 121. The investigator returned to the hotel the next day and again noticed the odor. While there, the investigator saw a black male, who did not appear to be McMurray, leaving the room and noticed that the male smelled like marijuana. On the same day, the investigator presented a search warrant affidavit to a magistrate judge, received a search warrant with a no-knock provision, and executed the warrant.

3

When police entered room 121, McMurray, a female, and four minor children were present. Police recovered three firearms, two scales, plastic baggies, a marijuana pipe, 40 Oxycodone pills, and 542.26 grams of marijuana inside the room. Police also discovered $696 in cash on McMurray's person. According to the investigator, McMurray was cooperative and told him that he was "[selling] to get back on his feet." When asked if one of the firearms was stolen, McMurray responded "No — well, I don't know, man. I just bought it from some guy and I don't know his name." Police ran the three firearms through GCIC and learned that one was possibly stolen. An officer contacted the likely owner, and police were able to match the serial number on the firearm recovered from McMurray's room with the owner's paperwork for the firearm.

McMurray was charged with possession of a controlled substance with intent to distribute, possession of marijuana with intent to distribute, theft by receiving stolen property, and possession of a firearm by a convicted felon. McMurray's trial counsel filed a motion to suppress the evidence found pursuant to the search warrant, and McMurray waived his right to a jury trial. The trial court conducted a combined suppression hearing and bench trial on October 14 and 17, 2014. At the close of evidence, the trial court found "issues with the warrant," but concluded it was valid.

4

The trial court found McMurray guilty on all four charges and sentenced him to 15 years with 5 to be served in confinement.

McMurray's trial counsel filed a motion for new trial. On January 21, 2016, new counsel was appointed to represent McMurray. On March 4, 2019, new counsel filed an amended motion for new trial.[1] On March 5, 2019, the trial court held a status hearing on McMurray's motion for new trial, during which McMurray's counsel stated that the trial court would not need further evidence other than that presented at trial in order to decide McMurray's motion. Accordingly, no hearing was held, and the trial court denied the motion the following day. McMurray filed a timely notice of appeal.

1. McMurray contends that the trial court erred by denying his motion to suppress items seized from his hotel room because the search warrant affidavit failed to establish probable cause. We disagree.

When reviewing whether an affidavit sufficiently establishes the probable cause necessary for issuance of a warrant, we must keep in mind that

---

[1] The reason for the more than three year gap is unclear from the record. During the subsequent status hearing, counsel stated he had been thoroughly reviewing the record since his appointment.

5

the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate], including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

(Citation and punctuation omitted.) *Stewart v. State*, 217 Ga. App. 45, 46-47 (456 SE2d 693) (1995). "A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." (Citation and punctuation omitted.) *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009). And "[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." (Citation and punctuation omitted.) Id. at 77-78.

With all of this in mind, we now turn to the search warrant affidavit at hand. The investigator made the following assertions in his affidavit: Officers responded to a complaint from the hotel manager that the room's occupant, McMurray, was

6

selling drugs out of the room. The manager told officers that she observed numerous people coming and going from the room, that the room smelled like marijuana, and that she believed marijuana was being sold out of the room. The responding officers could smell the odor of unburnt marijuana coming from the room. The manager opened the door to the room, and the responding officers noticed an even stronger odor of marijuana. The officers did not enter the room, but observed rolled marijuana cigarettes in plain view. After departing, one of the responding officers relayed this information to the affiant, who then ran a criminal history check on McMurray and discovered he was a convicted felon with various drug and firearm related charges. The affiant then went to the hotel and determined that the odor of marijuana was coming from room 121 and not any other room on the floor. The affiant spoke with a hotel employee who confirmed what the manager had reported. The following day, the affiant again went to the hotel and smelled a heavy marijuana odor emanating from room 121, but no other rooms on the floor. The affiant observed a black male he did not believe to be McMurray exit room 121. The male smelled like marijuana. The affiant is a P.O.S.T.-certified police officer who graduated from basic investigator school and numerous drug-related classes.

7

McMurray argues that material facts set forth in the affidavit were "flatly contradicted at trial by the very witnesses cited by [the affiant] as sources of his averments" because both the responding officer who testified at trial and the hotel manager denied seeing any kind of drugs, blunts, or marijuana cigarettes in plain view in the room. However, "[w]hen the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts." (Citation and punctuation omitted.) *State v. Brogan*, 340 Ga. App. 232, 234 (797 SE2d 149) (2017). Where the trial court does not make express findings of fact after a hearing on a motion to suppress, we construe the evidence most favorably to uphold the trial court's judgment. Id. Here, the trial court concluded that the search warrant was supported by probable cause and thus we must construe the evidence in support of the trial court's ruling.

Even if we consider the information regarding the marijuana blunts in plain view as false and thus omit it, the affidavit nonetheless provided probable cause to issue the warrant. See *Briscoe v. State*, 344 Ga. App. 610, 612 (2) (a) (811 SE2d 426) (2018) (in the case of false information included in the affidavit supporting a search warrant, the affidavit should be reexamined without the false statement to determine whether probable cause exists to issue warrant). The affidavit set forth other

8

information relayed to the investigator by the responding officer, including the complaint by the hotel manager, who was required to call police based on the hotel's protocol. See *Glass v. State*, 304 Ga. App. 414, 416-417 (1) (a) (696 SE2d 140) (2010) (hotel housekeeping staff considered "concerned citizen informant" and has "'preferred status' insofar as testing the credibility of the informant's information"). The investigator was entitled to credit the hotel manager's report as well as the information relayed by the responding officer. See *State v. Wells*, 332 Ga. App. 404, 406 (1) (771 SE2d 906) (2015) (an officer may present an affidavit in support of a search warrant based on statements obtained from another officer, and such hearsay is reliable under the circumstances); *Glass*, 304 Ga. App. at 416-417 (1) (a).

McMurray argues that although the affidavit states that the responding officers smelled the odor of marijuana emanating from room 121, the affidavit stated nothing in regard to those officers' training in recognizing and detecting the odor of marijuana. Thus, according to McMurray, the search warrant affidavit contained only the undisputed fact that the investigator smelled marijuana outside of his hotel room, and nothing in the affidavit showed that the investigator was qualified or trained to recognize the odor of marijuana.

In *State v. Kazmierczak*, 331 Ga. App. 817 (771 SE2d 473) (2015), upon which McMurray relies, this Court recognized that if "the affidavit for the search warrant contains sufficient information for a magistrate to determine that the officer who detected the odor of marijuana emanating from a specified location is qualified to recognize the odor, the presence of such an odor may be the *sole* basis for the issuance of a search warrant." (Emphasis supplied.) Id. at 823. Here, the investigator averred that he was "a graduate of . . . numerous drug related classes." Pretermitting whether this information was sufficient for the magistrate to conclude that the investigator was qualified to recognize the odor of marijuana, the presence of the odor was not the *sole* basis for the issuance of the search warrant in this case. Rather, the affidavit set forth further facts to show probable cause, including the information from the hotel manager and staff as well as the responding officers. We conclude that the information presented in the affidavit — even with the omission of the reference to "marijuana cigarettes" in plain view — provided a sufficient basis for concluding that, based on practical common sense, there was a fair probability that contraband would be found in McMurray's hotel room.

2. McMurray contends that the State presented insufficient evidence showing that he knew the firearm in his possession to be stolen. We agree.

Under OCGA § 16-8-7 (a), "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen. . . ." Thus, proof that McMurray knew or should have known that the firearm at issue was stolen was an essential element of the offense. See *Daughtie v. State*, 297 Ga. 261, 262 (2) (773 SE2d 263) (2015). "Proof of possession, alone, of recently stolen property is not sufficient to establish the essential element of the offense of theft by receiving stolen property that the possessor knew or should have known that the property was stolen." *Wells v. State*, 268 Ga. App. 62 (1) (601 SE2d 433) (2004). However, knowledge that goods are stolen "may be inferred where the circumstances would excite suspicion in the minds of ordinarily prudent persons." (Citation and punctuation omitted.) *Thomas v. State*, 270 Ga. App. 181, 182 (1) (b) (606 SE2d 275) (2004).

Here, the only evidence presented of the offense was that the stolen firearm was recovered from McMurray's hotel room along with two other firearms. The owner testified that he had kept the firearm in his truck console, and only noticed that it was missing when he cleaned out his truck. The owner reported the gun missing in October 2013, two months before it was found in McMurray's possession. When asked by the investigator if the firearm was stolen, McMurray responded "No — well,

11

I don't know, man. I just bought it from some guy and I don't know his name." We conclude that this evidence failed to show that McMurray knew or should have known that the firearm was stolen. See *Thomas*, 270 Ga. App. at 182 (1) (b) (evidence that stolen pistol was in defendant's possession and that he had purchased pistol for $120 from someone he did not know insufficient to sustain conviction for receiving stolen property); *Crowder v. State*, 271 Ga. App. 177, 179-180 (1) (609 SE2d 134) (2004) (evidence that handgun was found in hotel room to which defendant had key and that handgun had been reported stolen two years prior to defendant's arrest insufficient to sustain conviction for receiving stolen property). See also *Wells*, 268 Ga. App. at 62 (1). Thus, the conviction of theft by receiving stolen property was not supported by the evidence and must be reversed.

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Rickman, J., concur.*