S07P0687. WALKER v. THE STATE.
(653 SE2d 439)

BENHAM, Justice.

Artemus Rick Walker was convicted by a jury of murder and related offenses.[1] The jury fixed Walker's sentence for the murder at death, after finding beyond a reasonable doubt the existence of multiple statutory aggravating circumstances. See OCGA § 17-10-30 (b). For the reasons set forth below, we affirm Walker's convictions and sentences.

*General Grounds*

1. The evidence adduced at Walker's trial showed that he devised a plan to rob Lynwood Ray Gresham, who was the vice president of the bank that was next door to the service station Walker owned. Walker hired Gary Lee Griffin several days before the crimes to work at his service station and asked Griffin if he would help "rob and kill"

---

[1] The murder occurred on May 19, 1999. Walker was indicted by a Macon County grand jury on August 6, 1999, on the following charges: malice murder; felony murder; armed robbery; aggravated assault; attempted burglary; and possession of a firearm by a convicted felon. On August 23, 1999, the State filed written notice of its intent to seek the death penalty. Jury selection began on September 30, 2002, in Stewart County, and, once selected, the jury was transported to Macon County for the trial. See OCGA § 17-7-150 (a) (3). The jury found Walker guilty on all charges on October 2, 2002, and on the next day the jury recommended a death sentence for the murder. The trial court imposed the jury's death sentence for the malice murder, properly treated the felony murder conviction as mere surplusage (see *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993)), and imposed a life sentence for the armed robbery and twenty, ten, and five year consecutive sentences for the remaining convictions. Walker filed a motion for new trial on October 21, 2002, which he amended on August 25, 2005, and which the trial court denied on March 3, 2006. Walker filed a notice of appeal on March 31, 2006, his appeal was docketed in this Court on January 24, 2007, and the appeal was orally argued on April 2, 2007.

a "rich" man. On May 12, 1999, Walker borrowed an automobile that belonged to another of his employees and drove with Griffin to the hotel where Griffin was staying. They picked up Griffin's bicycle at the hotel and then traveled in the automobile to Walker's apartment. Walker gave Griffin black pants to change into and gave him a knife and a stun gun. Walker also changed into black clothing. They also loaded Walker's bicycle into the automobile.

Walker drove the pair with their bicycles to a place near Gresham's house and parked, and they rode the bicycles to Gresham's house. Griffin waited at the side of the house as Walker went to the door and engaged Gresham in a conversation in the front yard. Walker and Gresham began struggling. Walker told Griffin to use the stun gun on Gresham, but Griffin refused. Griffin also refused when Walker told him to stab Gresham with the knife. Griffin gave Walker the knife, and Walker stabbed Gresham 12 times in the chest and back. Walker told Griffin to pick up things that had fallen during the struggle, which included Gresham's keys and wallet. Walker dragged Gresham, who was still alive, to the side of the house and hid him in some bushes, where he was later found dead. Walker then told Griffin that he had "one more to kill" and asked Griffin for Gresham's keys. Walker tried to open the door to Gresham's house, but Gresham's wife, Roberta Gresham, locked a chain lock and a foot lock from inside. Roberta Gresham called the police, and she observed Walker, with whom she was familiar, through a window with "something on his hip that looked like a gun." Roberta Gresham's daughter, Allison, yelled to Walker that she had a gun. Walker and Griffin then rode away on their bicycles. Griffin was arrested nearby after he crashed his bicycle. The victim's wallet was found in Griffin's pocket, and a broken stun gun was found on Griffin's belt. Walker was arrested a few hours later after he was discovered in the woods nearby. The victim's blood was on Walker's clothes, and he had the victim's keys. The knife used to kill Gresham and a pistol were discovered near the site of Walker's arrest.

Construing the evidence in the light most favorable to the State, including Griffin's testimony and the eyewitness testimony of Roberta Gresham, we find that the evidence was sufficient to authorize a rational trier of fact to find Walker guilty on all of the charges. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). From our review of the record, it appears Walker failed to obtain a ruling on his motion for a directed verdict in the guilt/innocence phase; accordingly, the issue is waived. *Butts v. State*, 273 Ga. 760 (31) (546 SE2d 472) (2001). Furthermore, even if the issue were preserved for appeal, we would apply "[t]he same standard of review of the evidence" as we have just applied and would conclude that there was

no reversible error in the trial court's not granting the motion. *Wilson v. State*, 271 Ga. 811, 813 (1) (525 SE2d 339) (1999).

## Jury Selection

2. Walker argues that the trial court erred in excusing a number of prospective jurors for hardship, some of whom he names and some whose excusals appear in pages of the record he cites. See OCGA § 15-12-1 (a) (1); *McClain v. State*, 267 Ga. 378 (1) (c) (477 SE2d 814) (1996) (noting trial courts' "broad discretion" in applying statutory exemptions for hardship). Our review of the record reveals that Walker failed to object to any of these excusals, despite the fact that the trial court indicated that it had prepared notes regarding its reasons for each excusal that the parties were free to inspect. By failing to object, Walker has waived his right to complain on appeal. See *Blankenship v. State*, 258 Ga. 43 (3) (365 SE2d 265) (1988) (not addressing the excusal of two jurors about which the defendant had not objected at trial).

3. Walker argues that the trial court erred in limiting his voir dire of two prospective jurors. With respect to juror Dubose, Walker affirmatively indicated that he had no further questions for the juror, and he, therefore, has waived his right to complain on appeal. *Braley v. State*, 276 Ga. 47 (18) (572 SE2d 583) (2002). Pretermitting whether Walker also waived his right to complain on appeal regarding any limitation placed on his voir dire of juror Reynolds, we hold that the trial court did not abuse its discretion in not continuing what was already an extensive voir dire of that juror, particularly with respect to his death penalty views. *Rhode v. State*, 274 Ga. 377 (4) (552 SE2d 855) (2001).

## Guilt/Innocence Phase

4. Walker argues that the trial court made improper comments during the guilt/innocence phase that constituted expressions of opinion. See OCGA § 17-8-57. We find no reversible error.

Because he failed at trial to object or move for a mistrial, Walker has waived his right to complain on appeal regarding most of the comments, including references to the trial as a "murder case," an estimate of the time that would be required for the guilt/innocence phase, reference to the trial court and the parties collectively using the word "we," comments regarding the nature of cross-examination, and questions propounded by the trial court to a witness. See *Paul v. State*, 272 Ga. 845 (2) (537 SE2d 58) (2000). This Court has applied a "plain error" standard to comments by a trial judge that violate OCGA § 17-8-57, reversing despite the waiver of the issue where the

comments in question " 'seriously affect(ed) the fairness, integrity, and public reputation of th[e] judicial proceedings.' " Id. at 849 (quoting *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986)). The comments subject to waiver in Walker's case clearly do not meet this standard.

Walker did move for a mistrial after the trial court, in ruling on the admissibility of an item of evidence, commented on whether the item was identifiable without expert testimony as being a gun silencer. However, comments made in the course of ruling on objections are generally not the type of comments prohibited by OCGA § 17-8-57. See *Appling v. State*, 281 Ga. 590 (4) (642 SE2d 37) (2007); *Watson v. State*, 278 Ga. 763 (4) (604 SE2d 804) (2004). We find that the trial court's comments were not improper under the circumstances, including Walker's failure to request that his objection be heard outside the jury's presence.

5. Walker argues that the State introduced improper testimony about the victim during the guilt/innocence phase. We have held that background information about the victim that is not relevant to the issues in the guilt/innocence phase, particularly the sort of background information likely to engender the jury's sympathies, should not be presented to the jury during that phase. See *Lucas v. State*, 274 Ga. 640 (2) (b) (555 SE2d 440) (2001). In the context of this particular case, the trial court should have sustained Walker's objection to testimony by the victim's wife in the guilt/innocence phase about the victim's church membership and his being a deacon. However, after the trial court overruled Walker's objection and Walker objected to similar, subsequent testimony, the trial court sustained Walker's new objection. Upon our review of the record, we find that the trial court's initial error with respect to this testimony was harmless beyond a reasonable doubt. See id. at 644.

6. Walker argues that the State failed to show chain of custody of a blood sample taken from his body; however, he waived his right to complain on appeal regarding this issue, because he failed to object at trial. See *Welch v. State*, 257 Ga. 197 (3) (357 SE2d 70) (1987).

7. Walker argues that items seized during a search of his apartment, including tools and a gun silencer, were improperly admitted, because their probative value was outweighed by undue prejudice. We find that the trial court did not abuse its discretion in admitting these items of evidence. See *Brooks v. State*, 281 Ga. 514 (3) (640 SE2d 280) (2007).

8. Walker argues that the prosecutor made impermissible burden-shifting arguments in three portions of his closing argument in the guilt/innocence phase. Walker objected after the first portion of the argument he cites in his brief; however, he made no further objection after the trial court gave a curative instruction. Walker made no

objection at all regarding the other two portions of the argument that he cites in his brief. Accordingly, we find that this issue was waived at trial with regard to all three portions of the argument Walker cites insofar as the issue concerns his guilt. See *Gissendaner v. State*, 272 Ga. 704 (10) (b) (532 SE2d 677) (2000). We also find that the arguments, even if assumed improper, do not warrant reversal of Walker's death sentence as part of our overall review of whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, because the arguments did not in reasonable probability change the jury's choice of a sentence. See id.; *Pace v. State*, 271 Ga. 829 (32) (h) (524 SE2d 490) (1999); OCGA § 17-10-35 (c) (1).

9. Walker argues that the prosecutor argued improperly by stating in his closing argument in the guilt/innocence phase that a Bible verse stating that "the wicked flee when no man pursueth" described Walker, by asking the jurors *not* to decide to "let the Lord handle it," and by stating that the jury might be "the Lord's fisherman to handle" the defendant's accountability for his crimes. Because he did not object at trial, this issue is waived with regard to Walker's guilt. *Gissendaner v. State*, supra, 272 Ga. at 713. We further conclude that the arguments did not result in the imposition of the death penalty through the influence of passion, prejudice, or any other arbitrary factor, because, unlike the argument in another case wherein the prosecutor improperly urged the imposition of the death penalty based upon a religious mandate, the arguments in Walker's case simply urged the jury to accept its legal duty to pass judgment rather than abdicating that role. See id. at 714; *Carruthers v. State*, 272 Ga. 306 (2) (528 SE2d 217) (2000) (reversing where the prosecutor argued that religious texts mandated a death sentence). See also *King v. State*, 273 Ga. 258, 275 (35) (539 SE2d 783) (2000) ("[S]ome discretion must be afforded to trial courts in determining whether a particular argument, whether made by the State or by a defendant, tends to urge jurors' compliance with some religious mandate in potential exclusion of their duty to consider all applicable sentencing alternatives.").

*Sentencing Phase*

10. Walker argues that the trial court erred in admitting a letter addressed to his co-defendant, Gary Lee Griffin, at the Macon County Jail. The letter and its envelope both indicate that Charles McKellar was the author; however, McKellar testified that he had not sent the letter and that the handwriting was not his. Although the envelope lists McKellar's address at the Leisure Estates Motel as the return address, the envelope bore a stamp that testimony showed was placed on all outgoing mail from inmates at the Sumter County Jail where

Walker was being held pre-trial. The letter, by promises of money and by threats, sought to convince Griffin to take full blame for the murder. Testimony showed that both Griffin and McKellar worked for Walker at the time of the murder. Walker objected at trial, arguing essentially that the letter could not be authenticated as being written by him. Under the totality of the circumstantial evidence, we find that the trial court did not err by admitting the letter. *Johnson v. State*, 273 Ga. 872 (1) (548 SE2d 292) (2001); *Gunter v. State*, 243 Ga. 651 (4) (256 SE2d 341) (1979).

Pretermitting whether Walker's additional arguments regarding the letter were waived by his failure to raise them at trial, we conclude that they are meritless. The letter was relevant, and its probative value clearly outweighed any *undue* prejudice, because evidence of bad character is admissible in the sentencing phase. See *Braley v. State*, supra, 276 Ga. at 54. The letter was not inadmissible hearsay, because it was introduced as allegedly being Walker's *own* incriminating statement and because it was not introduced as proof of the matters asserted therein. *Tennyson v. State*, 282 Ga. 92 (3) (646 SE2d 219) (2007); *Kellam v. State*, 260 Ga. 464 (3) (396 SE2d 894) (1990).

11. Walker argues that the trial court allowed improper victim impact testimony during the sentencing phase. We find no reversible error.

Because he did not object to most of this testimony or to the trial court's apparent failure to conduct a full hearing regarding victim impact testimony, Walker has waived his right to complain regarding those matters on appeal. *Tollette v. State*, 280 Ga. 100 (11) (621 SE2d 742) (2005) (holding that an objection to victim impact evidence not raised in the trial court was waived). See also *Turner v. State*, 268 Ga. 213 (2) (a) (486 SE2d 839) (1997) (recommending that trial courts conduct pre-trial hearings wherein objections to victim impact testimony can be raised).

Walker *did* move for a mistrial after one witness, an employee of the victim and a friend of the victim's family, testified briefly regarding her reaction to hearing news of the murder, the emotional impact the murder had on her, and how the victim had done good things for his family and for the community. The trial court instructed the jury to disregard the testimony insofar as it referred to the impact of the crime on the witness as an individual, and Walker effectively renewed his motion for a mistrial. The victim impact statute allows testimony in the sentencing phase regarding "the emotional impact of the crime on the victim, the victim's family, or the community." OCGA § 17-10-1.2. Although a trial court's discretion in controlling victim impact testimony includes the power to limit the number of witnesses who are not family members and the extent of their testimony, we

hold that testimony about the "emotional impact of the crime on . . . the *community*" may include testimony by witnesses who are not family members regarding the impact the crime had on them personally. (Emphasis supplied.) Id. See *Jones v. State,* 267 Ga. 592 (2) (b) (481 SE2d 821) (1997) (noting that this Court has granted trial courts "unusually broad discretion" in governing victim impact evidence). Because the trial court could have admitted the testimony in question without committing error, there was obviously no harm in the trial court's refusal to grant Walker's renewed motion for a mistrial.

12. Walker complains that the prosecutor made several improper arguments during the sentencing phase. Because Walker did not object to any of these arguments at trial, they would warrant reversal of his death sentence only if they were improper and if they in reasonable probability changed the sentencing verdict. *Pace v. State,* supra, 271 Ga. at 844; *Gissendaner v. State,* supra, 272 Ga. at 713-714. We find that none of the arguments in question were improper.

(a) Walker argues that the prosecutor argued improperly in the sentencing phase by suggesting that the victim might have said "a last little prayer as his life faded away." We find that the argument was not improper. Counsel enjoy "very wide" lattitude in closing arguments, and we find that this argument was not improper under our case law governing permissible references to religion in arguing in favor of a death sentence. *Conner v. State,* 251 Ga. 113 (6) (303 SE2d 266) (1983). See *Carruthers v. State,* supra, 272 Ga. at 308-311; *King v. State,* 273 Ga. at 275.

(b) Walker argues that the prosecutor argued improperly by suggesting that Walker had left a gun silencer in his apartment for use in a future crime if he succeeded in the murder of the victim in this case. Upon our review of the record, we find that the argument was not improper, because there was evidence presented at trial about the silencer having been discovered in Walker's apartment and because a silencer is something likely to be used in criminal activity. See *Braley v. State,* supra, 276 Ga. at 54 ("[R]eliable evidence of bad character . . . is admissible in the sentencing phase of a death penalty trial."); *Fair v. State,* 245 Ga. 868, 873 (4) (268 SE2d 316) (1980) ("Any lawful evidence which tends to show [the defendant's] predisposition to commit other crimes is admissible in aggravation."). Compare *Henry v. State,* 278 Ga. 617 (1) (604 SE2d 826) (2004) (reversing where there was no evidence to support the argument that the defendant would present a future danger in prison).

(c) Walker argues that the prosecutor improperly expressed his opinion by using the phrase, "I think," in referring to what the jurors might be favoring as a sentencing option. Use of those words is not by

itself improper, and we find that the statements in question here were not improper in their contexts. See *Jackson v. State*, 281 Ga. 705 (6) (642 SE2d 656) (2007).

(d) Walker argues that the prosecutor argued improperly by urging the jury to send a message to those who would consider similar crimes. This argument was not improper. *Pace v. State*, supra, 271 Ga. at 844.

### *Sentence Review*

13. This Court is required to review each statutory aggravating circumstance and to determine if it is supported by the evidence. See OCGA § 17-10-35 (c) (2). As part of this review, we find that the second and third statutory aggravating circumstances found by the jury in its sentencing verdict vary from the language of the Code so severely that we cannot conclude that they constitute valid statutory aggravating circumstances supported by the evidence. See *Jarrell v. State*, 261 Ga. 880 (2) (413 SE2d 710) (1992). It is possible that the two statutory aggravating circumstances in question, which concern aggravated battery before death and torture, were submitted to the jury in support of the fifth statutory aggravating circumstance involving "depravity of mind." See OCGA § 17-10-30 (b) (7); *West v. State*, 252 Ga. 156 (2), 161 (Appendix) (313 SE2d 67) (1984) (prescribing a jury charge for the "depravity of mind" statutory aggravating circumstance). However, they cannot be regarded as proper statutory aggravating circumstances in their own right, because they omit critical portions of the language of the Code. Nevertheless, after setting aside these two statutory aggravating circumstances, we need not reverse Walker's death sentence, because it remains supported by at least one valid statutory aggravating circumstance. *Colwell v. State*, 273 Ga. 634 (11) (d) (544 SE2d 120) (2001).

Viewed in the light most favorable to the sentencing verdict, we find that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt the existence of the remaining statutory aggravating circumstances in this case, which were as follows: that the murder was committed while Walker was engaged in an armed robbery, which is a capital felony; that the murder was committed for the purpose of receiving money or a thing of monetary value; and that the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind. *Jackson v. Virginia*, supra; OCGA § 17-10-35 (c) (2). See OCGA § 17-10-30 (b) (2), (4), (7).

14. This Court is required by statute to examine each death sentence and to determine if it "is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the

defendant." OCGA § 17-10-35 (c) (3). This review concerns whether a death sentence is "excessive per se" or "substantially out of line" given the crime and the evidence regarding the defendant and whether the crime is in a category of crimes that "have so consistently ended with sentences less than death that the death penalty in any one case would be clearly disproportionate." (Citation and punctuation omitted.) *Gissendaner v. State*, supra, 272 Ga. at 716-717. Applying that standard, we conclude that the death sentence in this case is not disproportionate punishment. We have stated that our "proportionality review of death sentences includes special consideration of the sentences received by co-defendants in the same crime." *Allen v. State*, 253 Ga. 390, 395 (8) (321 SE2d 710) (1984). In that regard, we note that Walker's co-defendant, Gary Lee Griffin, has been sentenced to imprisonment for life rather than to death. However, the evidence at Walker's trial showed Walker to be the more culpable party. Furthermore, Griffin has been adjudicated mentally retarded, making him ineligible for a death sentence. See OCGA § 17-7-131 (a) (3), (j); *Atkins v. Virginia*, 536 U. S. 304 (122 SC 2242, 153 LE2d 335) (2002). The cases cited in the Appendix support our conclusion that Walker's punishment is not disproportionate in that each involved a deliberate plan to kill and killing for the purpose of receiving something of monetary value. See OCGA § 17-10-35 (e).

15. Upon a review of the trial record, we find that Walker's death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. See OCGA § 17-10-35 (c) (1).

*Judgment affirmed. All the Justices concur.*

### APPENDIX.

*Tollette v. State*, 280 Ga. 100 (621 SE2d 742) (2005); *Perkinson v. State*, 279 Ga. 232 (610 SE2d 533) (2005); *Franks v. State*, 278 Ga. 246 (599 SE2d 134) (2004); *Sealey v. State*, 277 Ga. 617 (593 SE2d 335) (2004); *Braley v. State*, 276 Ga. 47 (572 SE2d 583) (2002); *Arevalo v. State*, 275 Ga. 392 (567 SE2d 303) (2002); *Raheem v. State*, 275 Ga. 87 (560 SE2d 680) (2002); *King v. State*, 273 Ga. 258 (539 SE2d 783) (2000); *Jones v. State*, 273 Ga. 231 (539 SE2d 154) (2000); *Esposito v. State*, 273 Ga. 183 (538 SE2d 55) (2000); *Gissendaner v. State*, 272 Ga. 704 (532 SE2d 677) (2000); *Lee v. State*, 270 Ga. 798 (514 SE2d 1) (1999); *Whatley v. State*, 270 Ga. 296 (509 SE2d 45) (1998); *De Young v. State*, 268 Ga. 780 (493 SE2d 157) (1997); *Jones v. State*, 267 Ga. 592 (481 SE2d 821) (1997); *Carr v. State*, 267 Ga. 547 (480 SE2d 583) (1997); *Greene v. State*, 268 Ga. 47 (485 SE2d 741) (1997) (affirming on facts set forth in *Greene v. State*, 266 Ga. 439 (469 SE2d 129) (1996)); *Crowe v. State*, 265 Ga. 582 (458 SE2d 799) (1995); *Mobley v.*

*State*, 265 Ga. 292 (455 SE2d 61) (1995); *Ledford v. State*, 264 Ga. 60 (439 SE2d 917) (1994); *Ferrell v. State*, 261 Ga. 115 (401 SE2d 741) (1991).

DECIDED OCTOBER 9, 2007 —
RECONSIDERATION DENIED DECEMBER 13, 2007.

*Ramon J. Fajardo, Mark T. Phillips, Herbert L. Wells*, for appellant.

*Cecilia M. Cooper, District Attorney, Richard E. Nettum, Assistant District Attorney, Thurbert E. Baker, Attorney General*, for appellee.