# SUPREME COURT OF THE UNITED STATES

## ARTEMUS RICK WALKER *v.* GEORGIA

ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME
COURT OF GEORGIA

No. 08–5385.   Decided October 20, 2008

The petition for a writ of certiorari is denied.

Statement of JUSTICE STEVENS respecting the denial of
the petition for writ of certiorari.

The question presented by the petition for certiorari is
whether Georgia's current administration of its death
penalty violates the Eighth Amendment's guarantee
against arbitrariness and discrimination in capital sen-
tencing.  Specifically, petitioner charges that the Georgia
Supreme Court has "fail[ed] to: (1) conduct meaningful
proportionality review, and (2) enforce reporting require-
ments under Georgia's capital sentencing scheme," as is
required to ensure that only the most culpable offenders
are put to death.  Pet. for Cert. i.  In its response to the
petition, the State persuasively argues that petitioner did
not raise and litigate these claims in state court.  That
argument provides a legitimate basis for this Court's
decision to deny review.  I write separately to emphasize
that the Court's denial has no precedential effect, see
*Teague* v. *Lane*, 489 U. S. 288, 296 (1989), and to note that
petitioner's submission is supported by our prior opinions
evaluating the constitutionality of the Georgia statute.

Justice Stewart was the principal architect of our death
penalty jurisprudence during his tenure on the Court.  In
his separate opinion in *Furman* v. *Georgia*, 408 U. S. 238
(1972) (*per curiam*), he observed that death sentences
imposed pursuant to Georgia's capital sentencing scheme
were "cruel and unusual in the same way that being
struck by lightning is cruel and unusual."  *Id.*, at 309

(concurring opinion). The Georgia statute in effect at that time placed unfettered discretion in the hands of juries, resulting in the arbitrary, and often discriminatory, issuance of capital sentences. Justice Stewart concluded that the Eighth Amendment cannot tolerate the infliction of a death sentence under a legal system that permits this unique penalty to be wantonly and freakishly imposed. *Id.*, at 310.

The Georgia Legislature amended its capital sentencing scheme after *Furman*, and a challenge to the new scheme reached this Court in *Gregg* v. *Georgia*, 428 U. S. 153 (1976). Our decision in that case to uphold the later enacted statute was founded on an understanding that the new procedures the statute prescribed would protect against the imposition of death sentences influenced by impermissible factors such as race. Among the new procedures was a requirement that the Georgia Supreme Court "compar[e] each death sentence with the sentences imposed on similarly situated defendants to ensure that the sentence of death in a particular case is not disproportionate." *Id.*, at 198 (joint opinion of Stewart, Powell, and STEVENS, JJ.). We assumed that the court would consider whether there were "similarly situated defendants" who had *not* been put to death because that inquiry is an essential part of any meaningful proportionality review.

That assumption was confirmed a few years later in *Zant* v. *Stephens*, 462 U. S. 862 (1983). The question in that case was whether a death sentence was valid notwithstanding the jury's reliance on an invalid aggravating circumstance. As in *Gregg*, our decision to uphold the sentence "depend[ed] in part on the existence of an important procedural safeguard, the mandatory appellate review of each death sentence by the Georgia Supreme Court to avoid arbitrariness and to assure proportionality." 462 U. S., at 890. In response to our certified question regarding the operation of the State's capital sentenc-

ing scheme, the Georgia Supreme Court expressly stated that its proportionality review "'uses for comparison purposes not only similar cases in which death was imposed, but similar cases in which death was not imposed.'" *Id.*, at 880, n. 19.[1] That approach seemed judicious because, quite obviously, a significant number of similar cases in which death was not imposed might well provide the most relevant evidence of arbitrariness in the sentence before the court.

The opinions in another Georgia case, *McCleskey* v. *Kemp*, 481 U. S. 279 (1987), make it abundantly clear that there is a special risk of arbitrariness in cases that involve black defendants and white victims. See also *Turner* v. *Murray*, 476 U. S. 28, 33–37 (1986) (plurality and majority opinions) (discussing the heightened risks of prejudice that inhere in the prosecution of interracial capital offenses). Although there is some indication that those risks have diminished over time, at least the race-of-victim effect persists. See Baldus & Woodworth, Race Discrimination and the Legitimacy of Capital Punishment: Reflections on the Interaction of Fact and Perception, 53 DePaul L. Rev. 1411, 1424–1426 (2004).

It is against that backdrop that I find this case, which involves a black defendant and a white victim, particularly

---

[1] The salient aspects of Georgia's capital sentencing scheme have changed little since we evaluated them in *Gregg* and *Zant*. By statute, the State must prove at least one of an enumerated list of aggravating circumstances for an offense to be death eligible. Ga. Code Ann. §17–10–30(b) (2008). The jury then has complete discretion to weigh all aggravating and mitigating factors in determining the sentence. Georgia law requires the State Supreme Court to review each death sentence to determine whether it "was imposed under the influence of passion, prejudice, or any other arbitrary factor" and whether it "is excessive or disproportionate to the penalty imposed in similar cases." §17–10–35(c). The trial court must in each case transmit the entire record and transcript, along with a special report prepared by the trial judge, to facilitate appellate review. §17–10–35(a).

troubling. The State's evidence showed that, on the night of the murder, petitioner and an accomplice drove to the victim's home. After petitioner drew the victim outside, the two engaged in a struggle and petitioner stabbed the victim 12 times. While his accomplice collected the victim's wallet, petitioner used the victim's keys to try to gain access to his house, stating that he "had 'one more to kill.'" When a woman inside the house yelled that she had a gun, petitioner and his accomplice fled. 282 Ga. 774, 775, 653 S. E. 2d 439, 443 (2007). The jury found petitioner guilty of murder, felony murder, armed robbery, aggravated assault, attempted burglary, and possession of a firearm during the commission of a crime. After the penalty phase proceeding, the jury concluded that the State had proved five statutory aggravating factors (two of which the Georgia Supreme Court later found invalid, *id.*, at 781, 653 S. E. 2d, at 447), and it sentenced petitioner to death.

Rather than perform a thorough proportionality review to mitigate the heightened risks of arbitrariness and discrimination in this case, the Georgia Supreme Court carried out an utterly perfunctory review. Its undertaking consisted of a single paragraph, only the final sentence of which considered whether imposition of the death penalty in this case was proportionate as compared to the sentences imposed for similar offenses. And even then the court stated its review in the most conclusory terms: "The cases cited in the Appendix support our conclusion that [petitioner's] punishment is not disproportionate in that each involved a deliberate plan to kill and killing for the purpose of receiving something of monetary value." *Id.*, at 782, 653 S. E. 2d, at 447–448. The appendix consists of a string citation of 21 cases in which the jury imposed a death sentence; it makes no reference to the facts of those cases or to the aggravating circumstances found by the jury.

Had the Georgia Supreme Court looked outside the

universe of cases in which the jury imposed a death sentence, it would have found numerous cases involving offenses very similar to petitioner's in which the jury imposed a sentence of life imprisonment. See, *e.g.*, *Jones* v. *State*, 279 Ga. 854, 622 S. E. 2d 1 (2005); *Spickler* v. *State*, 276 Ga. 164, 575 S. E. 2d 482 (2003); *Cross* v. *State*, 271 Ga. 427, 520 S. E. 2d 457 (1999); *Jenkins* v. *State*, 268 Ga. 468, 491 S. E. 2d 54 (1997); *LeMay* v. *State*, 265 Ga. 73, 453 S. E. 2d 737 (1995) (the circumstances of the offense are described in *LeMay* v. *State*, 264 Ga. 263, 443 S. E. 2d 274 (1994)); *Cobb* v. *State*, 250 Ga. 1, 295 S. E. 2d 319 (1982). If the Georgia Supreme Court had expanded its inquiry still further, it would have discovered many similar cases in which the State did not even seek death. See, *e.g.*, *Davis* v. *State*, 281 Ga. 871, 644 S. E. 2d 113 (2007); *Wiggins* v. *State*, 280 Ga. 627, 632 S. E. 2d 80 (2006); *Escobar* v. *State*, 279 Ga. 727, 620 S. E. 2d 812 (2005); *Stanley* v. *State*, 261 Ga. 412, 405 S. E. 2d 493 (1991). Cases in both of these categories are eminently relevant to the question whether a death sentence in a given case is proportionate to the offense.[2] The Georgia Supreme Court's failure to acknowledge these or any other cases outside the limited universe of cases in which the defendant was sentenced to death creates an unacceptable risk that it will overlook a sentence infected by impermissible considerations.[3]

———————

[2] JUSTICE THOMAS states that the Georgia Supreme Court in fact "considered a life sentence in its proportionality review" by examining the sentence of petitioner's accomplice. *Post*, at 6, n. 2. As the concurring opinion elsewhere notes, however, the accomplice "was ineligible for the death penalty because he was adjudged mentally retarded." *Post*, at 3. Because petitioner's accomplice is not a "similarly situated defendant," his life sentence does not provide a meaningful point of comparison.

[3] Moreover, even the conclusory review that the Georgia Supreme Court actually undertook was erroneous because it failed to use reasonable comparators. Had the court attended to the facts of the cases cited in the appendix, it would have noted that in almost 30 percent of

Particularly troubling is that the shortcomings of the Georgia Supreme Court's review are not unique to this case. In the years immediately following *Gregg*, it was that court's regular practice to include in its review cases that did not result in a death sentence. That practice began to change around the time this Court decided *Pulley* v. *Harris*, 465 U. S. 37 (1984). We stated in that case that the Eighth Amendment does not require comparative proportionality review of every capital sentence. *Id.*, at 44–46; see also *McCleskey*, 481 U. S., at 306 ("[W]here the statutory procedures adequately channel the sentencer's discretion, such proportionality review is not constitutionally required"). But that assertion was intended to convey our recognition of differences among the States' capital schemes and the fact that we consider statutes as we find them, *id.*, at 45; it was not meant to undermine our conclusion in *Gregg* and *Zant* that such review is an important component of the Georgia scheme.[4]

———————

them the defendant was convicted of two homicides, in contrast to the single homicide for which petitioner was convicted. See *Franks* v. *State*, 278 Ga. 246, 599 S. E. 2d 134 (2004); *Sealey* v. *State*, 277 Ga. 617, 593 S. E. 2d 335 (2004); *Arevalo* v. *State*, 275 Ga. 392, 567 S. E. 2d 303 (2002); *Raheem* v. *State*, 275 Ga. 87, 560 S. E. 2d 680 (2002); *DeYoung* v. *State*, 268 Ga. 780, 493 S. E. 2d 157 (1997); *Ferrell* v. *State*, 261 Ga. 115, 401 S. E. 2d 741 (1991). The court's reliance on such dissimilar comparators further undermines the risk-reducing function served by its review.

[4] JUSTICE THOMAS suggests that the Court in *McCleskey* "endorsed" precisely the same proportionality review undertaken by the Georgia Supreme Court in this case. *Post*, at 1. Notably, McCleskey did not challenge the scope of the state court's proportionality review. See Brief for Respondent in *McCleskey* v. *Kemp*, O. T. 1986, No. 84–6811, p. 29. It is thus unsurprising that this Court's brief discussion of the state court's review did not recognize or revisit our observation in *Zant* v. *Stephens*, 462 U. S. 862 (1983), regarding the usual content of that review; indeed, that portion of the Court's discussion does not acknowledge *Zant* at all. See 481 U. S., at 306. I hesitate to read into *McCleskey* this Court's endorsement of the Georgia Supreme Court's abridged proportionality review when that issue was neither briefed by

Since *Pulley*, the Georgia Supreme Court has significantly narrowed the universe of cases from which it culls comparators. It now appears to be the court's practice never to consider cases in which the jury sentenced the defendant to life imprisonment. See Note, 39 Ga. L. Rev. 631, 657 (2005) (determining that in each of 55 capital cases reviewed by the Georgia Supreme Court between 1994 and 2004, the court exclusively considered other cases resulting in a death sentence). This is not the review that the Georgia Supreme Court represented to us in *Zant*. And the likely result of such a truncated review— particularly in conjunction with the remainder of the Georgia scheme, which does not cabin the jury's discretion in weighing aggravating and mitigating factors—is the arbitrary or discriminatory imposition of death sentences in contravention of the Eighth Amendment.

Petitioner also notes a second failure of the Georgia Supreme Court's review in this case. In all capital cases, Georgia law requires the trial court to transmit, along with the entire record and transcript, a detailed report prepared by the trial judge describing the defendant's history and the circumstances of the case. Ga. Code Ann. §17–10–35(a). Although it has previously admonished trial courts of the necessity of complying with this rule, see *McDaniel* v. *State*, 271 Ga. 552, 553, 522 S. E. 2d 648, 650 (1999), the Georgia Supreme Court in this case neglected to enforce it. This breakdown in the statutory process is especially troubling when viewed in light of the other shortcomings of that court's review. "When a defendant's life is at stake, th[is] Court has been particularly sensitive to insure that every safeguard is observed." *Gregg*, 428 U. S., at 187 (joint opinion of Stewart, Powell, and STEVENS, JJ.). The Georgia Supreme Court owes its capital litigants the same duty of care and must take

–––––––––

the parties nor thoroughly considered by the Court.

seriously its obligation to safeguard against the imposition of death sentences that are arbitrary or infected by impermissible considerations such as race.