701 S.E.2d 564 (2010)
In the Interest of J.L., a child.
No. A10A0876.
Court of Appeals of Georgia.
September 16, 2010.
David A. Basil, for appellant.
Barry H. Wood, for appellee.
MIKELL, Judge.
The state filed a petition alleging that 14-year-old J.B.L. ("appellant") was delinquent by committing theft by receiving two motorcycles, a Honda and a Suzuki, which he knew or should have known were stolen. The juvenile court adjudicated appellant delinquent with regard to the Suzuki but not the Honda. Because the evidence does not support the juvenile court's finding, beyond a reasonable doubt, that appellant should have known that the Suzuki was stolen, we reverse the judgment.
We are mindful that the standard of review is deferential.
In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a *565 reasonable doubt, that the juvenile committed the acts charged.[1]
Viewed in this light, the evidence shows that in July 2008, two motorcycles, a 2002 CR 85 Honda and a 2007 Suzuki RMZ 250, both dirt bikes, were stolen from a trailer owned by Angela Cosby. She testified that she had purchased them in December 2007 for her sons, Stephen Dover and T.D. According to Cosby, when the motorcycles were stolen they had been ridden about 200 hours and were in "brand new" condition. When they were returned to Cosby, they were inoperable. Cosby testified that she saw the motorcycles while driving along Strickland Avenue one day and called the police.
Douglasville Police Officer Sadye Pittman testified that she responded to the call on or about October 20, 2008, and found the motorcycles fastened on top of a trailer in the driveway of appellant's home. Pittman spoke with appellant and his older brother, J.L., both of whom stated that they had not realized that the bikes were stolen and that they were making payments on one of them to an individual. Pittman testified that the bikes were covered in mud.
Detective Dave Watson testified that he investigated the theft. Appellant and J.L. stated that they bought the bikes from a man named Blake; that they were supposed to pay Blake $1,500 for the Suzuki; that J.L. was supposed to make a down payment of $300 through a juvenile named A.R.; and that J.L. was supposed to trade certain bikes he owned as part of the deal. Watson testified that after interviewing Blake, searching his premises, and interviewing A.R., Watson was unable to validate appellant's explanation as to how he and J.L. obtained the bikes. In addition, appellant did not have a bill of sale or any other document evidencing the transaction. Watson admitted, however, that appellant and J.L. had not been trying to hide the motorcycles, as the bikes were found in the boys' front yard.
Stephen Dover testified that he owned the bikes with his mother; that he was making payments on the Suzuki; and that he believed that the purchase price of the Suzuki was $2,500. Dover testified that the bikes were in great condition before they were stolen. When they were returned, however, the Honda would not run, the Suzuki had no tires, a broken clutch, and a broken carburetor, and the stickers had been removed from the bikes. Dover testified that he spent $500 to get the Suzuki running again, although a dealership had quoted him a price of $2,900 for all of the repairs. Dover also testified that he sued J.L. in magistrate court to recover damages for both bikes. The complaint and judgment, which were tendered into evidence, showed that Dover was seeking $5,313.24 from J.L. for both motorcycles and that J.L. was ordered to pay Dover $1,200 at the rate of $200 per month. The complaint and judgment do not differentiate between the two bikes.
Appellant's mother, Tammy Long, testified that in mid-August, Blake and A.R. brought the Suzuki over to her house; that appellant agreed to buy it for $1,000, including a $250 down payment; that Long asked Blake if the bike was stolen, and he replied that it was not; that appellant gave Blake $250; that she asked Blake for the title, and he said he would provide it after he was paid. Long did not request a bill of sale. She testified that appellant rode the Honda; that it needed work when he got it; that they had it repaired at a Honda dealership; and that J.L. rode the Suzuki, which was in good condition when the boys acquired it. On questioning by the court, Long testified that she asked Blake if the Suzuki was stolen because she "had a weird feeling about it."
Appellant testified that he believed that Blake had given A.R. the Honda as a gift; that on or about August 15, appellant traded A.R. two dirt bikes for the Honda, even though it would not run; and that he believed it was a fair deal because the Honda was capable of going faster than the bikes he traded. According to appellant, Blake spoke to him about the Suzuki a week earlier and brought the bikes to A.R.'s house. Appellant then rode the Suzuki from A.R.'s house to his *566 house. Appellant testified that Blake was supposed to give him a bill of sale but did not; that he gave Blake the downpayment; and that he was not concerned that the bike was stolen because he "rode it right past" Dover's house on the day he acquired it. Appellant also testified that he never removed any stickers from either the Suzuki or the Honda; and that after he learned that the bikes were stolen, he demanded his old bikes back from A.R., but A.R. refused to return them. Appellant also testified that Blake called him asking for monthly payments and that he paid $500 total for the Suzuki.
The juvenile court adjudicated appellant delinquent for theft by receiving the Suzuki, finding that he should have known that the motorcycle was stolen. Appellant asserts that the evidence is insufficient to sustain the adjudication, and we agree.
"A person commits the offense of theft by receiving stolen property when he receives ... or retains stolen property which he knows or should know was stolen."[2] Scienter, or knowledge that the property was stolen, is an essential element of the crime.[3] "Where one admits buying and receiving goods shown by undisputed evidence to have been stolen, the burden is still upon the [s]tate to prove beyond a reasonable doubt that the transaction occurred with guilty knowledge on the part of the accused."[4] Scienter "may be inferred from circumstances, where the circumstances would excite suspicion in the minds of ordinarily prudent persons."[5] In the case at bar, the judge inferred scienter from the following: (1) appellant's testimony that he was expecting a bill of sale but did not follow up; (2) appellant's testimony that he drove past Dover's house on the bike, "which tells me that he must have known at the time that he drove that bike that there must have been some conversation that the bike was stolen;" (3) Long's testimony that she asked Blake whether the bike was stolen because she thought it was "a little hinky"; and (4) the court's reasoning that the bike must have been worth more than the costs of repair because "[o]therwise, you would just total it out."
Even construing all reasonable inferences from the evidence in favor of the juvenile court's findings,[6] we find the evidence insufficient to support appellant's adjudication under the standard required by Jackson v. Virginia.[7] "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[8] In our view, appellant's testimony that he was not concerned about the bike being stolen because he rode it in front of Dover's house on the day he acquired it is consistent with his testimony that he did not learn about the bikes being stolen until being told by the police. Appellant's testimony permits an inference that after *567 learning of the theft, he realized that he had not had a reason to believe the Suzuki was stolen since he had ridden it on the street in front of Dover's house. There was no evidence that appellant had tried to conceal the Suzuki.[9] Cosby testified that she saw it as she was riding by appellant's house, and the police testified that the motorcycles were not hidden from view. In addition, although "buying at a price grossly less than the real value is a sufficient circumstance to excite suspicion,"[10] the evidence does not support the juvenile court's finding that the value of the Suzuki exceeded $2,900, the cost of repair. The only evidence of the bike's value is Dover's testimony that he believed that the bike cost $2,500 and was in "great condition" when it was stolen, as well as Cosby's testimony that it had been ridden about 200 hours. Cosby testified that she purchased the bike in December 2007 and that it was stolen in July 2008, but, despite appellant's counsel's objection, the juvenile court did not permit counsel to question her concerning the value of the Suzuki at the time of the theft.[11] The judgment issued by the magistrate court against J.L. for $1,200 does not differentiate between the two bikes. There is evidence that appellant agreed to pay $1,000 for the Suzuki.[12] Absent evidence of the "real value" of the Suzuki at the time of the theft, the evidence does not support a finding, beyond a reasonable doubt, that the price offered by appellant was grossly disproportionate to the value. The only remaining circumstantial evidence relied upon by the juvenile court is appellant's testimony that he asked for a bill of sale. Standing alone, this evidence does not support a finding of scienter beyond a reasonable doubt.[13] Accordingly, the judgment must be reversed.
Judgment reversed.
SMITH, P.J., and ADAMS, J., concur.
NOTES
[1] (Citations and punctuation omitted.) In the Interest of M.G., 233 Ga.App. 23, 503 S.E.2d 302 (1998).
[2] OCGA § 16-8-7(a).
[3] Harris v. State, 239 Ga.App. 723, 724, 521 S.E.2d 864 (1999) (wife's conviction reversed where evidence did not show that she knew that her husband had stolen the tools found in their residence).
[4] (Citation omitted.) Prather v. State, 116 Ga. App. 696(1), 158 S.E.2d 291 (1967); McGill v. State, 106 Ga.App. 482, 484(1), 127 S.E.2d 332 (1962) (evidence of discrepancy in value was insufficient to establish knowledge that items were stolen where there was no evidence of condition of items at time of transaction).
[5] (Punctuation and footnotes omitted.) Brown v. State, 265 Ga.App. 613, 614(1), 594 S.E.2d 770 (2004) (evidence that the tools were new when they were stolen and that the defendant knew their value when he accepted and pawned them held sufficient to show guilty knowledge).
[6] In the Interest of C.D.G., 279 Ga.App. 718, 632 S.E.2d 450 (2006).
[7] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); see Smith v. State, 290 Ga.App. 689, 691, 659 S.E.2d 917 (2008) (evidence that accused pawned stolen speakers, without more, was insufficient to establish guilty knowledge).
[8] OCGA § 24-4-6. See generally In the Interest of M.H., 288 Ga.App. 663, 665(1), 655 S.E.2d 249 (2007) (reasonable hypothesis of innocence warranted reversal of adjudication); Harris, supra; McGill, supra at 483-484(1), 127 S.E.2d 332.
[9] Compare Duncan v. State, 278 Ga.App. 703, 707(1)(c), 629 S.E.2d 577 (2006) (defendant's spontaneous statement that "he didn't want the police to think that he had stole" items in trash can, in which he had concealed stolen racing jacket, when considered together, supported inference of guilty knowledge).
[10] (Punctuation and footnote omitted.) Brown, supra.
[11] The juvenile court's refusal to allow cross-examination on this issue has been enumerated as error, but in light of our reversal based on insufficient evidence, we need not address it.
[12] Compare Maxwell v. State, 182 Ga.App. 571, 572, 356 S.E.2d 533 (1987) (appellant bought three vehicles for $2,300, although they had a fair market value in excess of $35,000, and had no paperwork on any of them); Brown, supra (appellant knew tools were valued at $800 but acquired them in exchange for a puppy worth $50 plus $50 in pawn).
[13] See Smith, supra; Thomas v. State, 270 Ga. App. 181, 182(1)(b), 606 S.E.2d 275 (2004) (evidence that accused bought a pistol for $120 from a stranger held insufficient to infer scienter); McGill, supra. Compare Maxwell, supra.