A10A1257. RAINLY v. THE STATE.
A10A1258. EVERETTE v. THE STATE.
A10A1259. ROBINSON v. THE STATE.
(705 SE2d 246)

PHIPPS, Presiding Judge.

Joseph Rainly, Phylicia Everette and Michael Robinson were tried together in connection with the December 18, 2007 armed robbery of a video store. Rainly and Robinson were each convicted of two counts of armed robbery, two counts of aggravated assault, two counts of kidnapping and one count of possession of a firearm during the commission of a felony. Everette was convicted of one count of armed robbery, two counts of aggravated assault, two counts of kidnapping, one count of possession of a firearm during the commission of a felony, one count of theft by receiving stolen property (a Glock handgun) and one count of possession of marijuana with intent to distribute. Each defendant filed a motion for new trial, which the trial court granted as to the kidnapping convictions[1] and denied as to the remaining convictions. We have consolidated their appeals. While the arguments raised in the appeals vary to some extent, the appellants' arguments include challenges to the sufficiency of the evidence to support the aggravated assault and theft by receiving stolen property convictions, the court's allowing evidence and statements concerning a prior robbery of the same store, the effectiveness of trial counsel, the introduction of victim-impact

---

[1] The court found the asportation element of kidnapping was not proved in light of *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008) (overruling cases finding asportation element proved by "slight movement"); but see *Leverette v. State*, 303 Ga. App. 849, 850 (1), n. 4 (696 SE2d 62) (2010) (subsequent to *Garza*, the legislature amended the kidnapping statute regarding the asportation element, said amendment applicable to crimes committed on or after July 1, 2009).

testimony or comments during the guilt-innocence phase of the trial, the court's refusal to give certain requested jury charges, and the prosecutor's closing argument. Everette's conviction for theft by receiving stolen property was not supported by sufficient evidence, so it is reversed. The remaining convictions of all three appellants are affirmed.

Viewed in the light most favorable to the verdict,[2] the evidence showed the following. A video store clerk testified that on December 18, 2007, he was assisting with store closing duties by stocking products near the center of the store when he heard screams and saw the store manager running toward him. A man pointed a gun at the clerk and told him to stop what he was doing. The gunman and two men who were with him grabbed the clerk and took him to the front of the store. The clerk was told to get on the ground, and his wallet and cell phone were taken; inside his wallet was a business card he had received from a police officer in connection with a robbery of the store one week before. The clerk saw one of the three men take money from the cash register. The gunman took the manager to the back of the store while the other two men held the clerk on the ground. The two men then picked the clerk up and "handed [him] off" to the gunman. The gunman told the clerk to open the back door, which he did. The clerk saw outside a white car with a black bumper; the car's engine was running and it appeared that someone was inside the car.

The store manager also testified regarding what she had witnessed on December 18, 2007. She stated that a man with his face covered came into the store. She ran to the back of the store, screaming. The man pointed a gun at her and moved her to the front of the store, where she saw the store clerk and two other people. "[T]hey" ordered the manager to open the cash register and took the money. The gunman also took video game systems. One of the men ordered the manager to open the safe, but when it did not open immediately, the men fled. The manager called the police.

One of three officers who responded to the call testified that he had investigated a December 12, 2007 robbery of the same video store. Two employees were present at the December 12, 2007 robbery — Everette and the store clerk whose testimony is described above. The officer had given each employee a business card upon which he had written his name and badge number, along with the case number and a phone number to call if they had questions or information regarding the December 12, 2007 robbery. In responding

---

[2] *Morris v. State*, 284 Ga. 1, 2 (1) (662 SE2d 110) (2008); *Adkins v. State*, 279 Ga. 424, 425 (614 SE2d 67) (2005).

to the December 18, 2007 robbery, the officer directed another officer to look for the white car with a black bumper at the Sugarloaf Parkway Apartments because he "had a feeling that it might have been one of the former employees that might have been in on it." On cross-examination, the officer stated that Everette was a victim in the prior robbery, and that she was not investigated or listed as a suspect in that earlier incident.

The second officer testified that he remained at the video store assisting the first officer for about 15 to 20 minutes, then went to the apartment complex and saw such a vehicle parked outside one of the buildings. The hood was warm and, through the car's window, he saw several video game systems. The officer then moved a distance away from the car and observed three men walk through the breezeway beside the building toward the car, then walk back toward the building; one of them was carrying a white box. Someone then drove the white car away.

A third police officer testified that he responded to the emergency call. He testified that the same store had been robbed the week before and that a store employee lived in an apartment complex about two-and-a-half miles away. He and other officers went to the Sugarloaf Parkway Apartments and approached Everette's door. A man started to exit the apartment but ran back inside; he was apprehended and later identified as EddieLee Peterson. Another man began exiting through a bedroom window, but the officers had surrounded the building, and he went back inside.

Upon entering the apartment, officers found a Glock handgun on the living room floor, Everette hiding in a closet, and clothing consistent with that worn by the robbers. Officers found inside a locked bedroom a video game system in a white box, consistent with those reported stolen in the robbery earlier that night. Inside the pocket of a jacket found inside the apartment, officers found identification and insurance cards belonging to the store clerk and the officer's business card taken from the store clerk present during both the December 12, 2007 and December 18, 2007 incidents. Everette told officers that a blue Honda in the parking lot was hers and that she had marijuana in the car. Officers recovered from Everette's car several video game systems "that appeared to be the same as what was stolen from the [store]," as well as a sandwich bag containing a green leafy substance that tested positive for marijuana, two digital scales and small plastic baggies. A small baggie of marijuana was also found in Everette's apartment. Officers arrested Rainly, Everette, Robinson and Peterson.

A police officer testified that he interviewed Rainly, Everette, and Robinson at police headquarters. Rainly told the officer that the plan was formulated at Everette's house, and there had been "a

conversation about who would hold the gun during the robbery." Everette told the officer that she had described to the other individuals the circumstances of the earlier robbery and told them "how to do it." Everette also told the officer that she made more money selling marijuana than she did working at the video store. Robinson told the officer that he went to the video store with Peterson, that Peterson "carried a gun" and did most of the talking, and that "they" took video games from the store, placed them in the white car, went back to the apartment in that car and unloaded the items into the blue car.

Prior to trial, Peterson pleaded guilty to two counts of armed robbery, two counts of kidnapping, two counts of aggravated assault, and one count of possession of a firearm during the commission of a felony (all in connection with the December 18, 2007 incident). At trial, Peterson testified that on December 18, 2007, he went with Rainly and Robinson to Everette's apartment. While there, Everette told him, Rainly and Robinson that the video store where she worked had been robbed and described how it had happened. Peterson retrieved a gun out of Everette's car, and he, Rainly and Robinson went to the video store in a white car; at this point in his testimony, Peterson did not mention Everette as being present in the car, though he testified to that fact later. Peterson entered the store first, and Rainly and Robinson entered behind him. Peterson chased an employee and pulled the gun from his pocket. Peterson caught up with the employee at the back of the store and brought her to the front of the store, where Rainly and Robinson were with the other store employee. Peterson told one of the employees to open the safe, but it did not open immediately. The employee loaded video game systems onto a cart, then pushed the cart out the back door. Peterson left through the back door, where he got into a white car in which Rainly, Everette and Robinson were sitting; video games were also in the car. Everette drove the car back to her apartment, and they all went inside. Rainly, Robinson and Peterson went outside to move the items from the white car into Everette's blue Honda. Peterson then carried a video game system to Everette's apartment. As Rainly, Robinson and Peterson were preparing to leave, the police arrived.

### Case No. A10A1257

1. Rainly contends that the evidence was insufficient to support his aggravated assault convictions because there was no evidence that he pointed a gun at the store clerk or that either the clerk or the manager was placed in reasonable apprehension of immediately receiving a violent injury.

In Count 3 of the indictment, the state accused Rainly (and the

other defendants) of committing aggravated assault by making an assault upon the store manager, with intent to rob, by pointing a handgun at her, thereby placing her in reasonable apprehension of immediately receiving a violent injury. In Count 4, the state accused Rainly (and the other defendants) of committing aggravated assault upon the store clerk by assaulting him with a handgun, a deadly weapon, by pointing a handgun at him, thereby placing him in reasonable apprehension of immediately receiving a violent injury.[3]

Even though Rainly did not actually use a weapon, there was evidence that Peterson brandished a handgun and pointed it at both the manager and the clerk. Peterson's use of a weapon can be attributed to Rainly because one who intentionally aids or abets the commission of a crime by another is a party to the crime and equally guilty with the principal.[4] And "reasonable apprehension of injury can be proved by circumstantial or indirect evidence as well as by direct or positive evidence. Indeed, the presence of a gun would normally place a victim in reasonable apprehension of being injured violently."[5] The evidence was sufficient to authorize a rational trier of fact to find Rainly guilty beyond a reasonable doubt as a party to two counts of aggravated assault as charged in Counts 3 and 4 of the indictment.[6] Although he makes no specific argument regarding the sufficiency of the evidence to support the remaining convictions, the evidence was also sufficient for a rational trier of fact to find Rainly guilty beyond a reasonable doubt of having committed those crimes.[7]

2. Rainly contends that the trial court abused its discretion by permitting witnesses to mention in their testimony, and the prosecutor to mention during his opening statement and closing argument, the December 12, 2007 robbery of the video store. He asserts that evidence of the prior robbery was inflammatory and irrelevant and that, because it amounted to similar transaction evidence, the court

---

[3] OCGA § 16-5-21 (a) provides, in relevant part, that a person commits the offense of aggravated assault when he assaults (1) with intent to rob; or (2) with a deadly weapon. OCGA § 16-5-20 (a) (2) provides, in relevant part, that a person commits the offense of assault when he commits an act which places another in reasonable apprehension of immediately receiving a violent injury.

[4] *Robinson v. State*, 246 Ga. App. 576, 577-578 (1) (541 SE2d 660) (2000); see *Mason v. State*, 262 Ga. App. 383 (1) (585 SE2d 673) (2003).

[5] *Willingham v. State*, 281 Ga. 577, 578-579 (642 SE2d 43) (2007) (citations and punctuation omitted).

[6] See id. at 578-579; *Serchion v. State*, 293 Ga. App. 629, 631 (b) (667 SE2d 624) (2008).

[7] In Count 1, Rainly was accused of committing armed robbery by, with intent to commit theft, taking video games and currency from the immediate presence of the store manager by use of an offensive weapon. In Count 2, he was accused of the same offense, except with the clerk as the victim. See OCGA § 16-8-41. In Count 7, Rainly was charged with possession of a firearm during the commission of a felony by unlawfully having on his person a firearm during the commission of a felony (aggravated assault). See OCGA § 16-11-106.

erred in allowing it without following the procedures required for the admission of similar transaction evidence. Specifically, he cites the prosecutor's comment in the opening statement (that the store was robbed previously and that Everette and the clerk present during the December 18 incident were working when the previous incident occurred, and that was what prompted officers to go to Everette's apartment to investigate the December 18 incident); an officer's testimony that one officer left the crime scene to check the area where one of the employees present at the previous robbery lived; and the clerk's testimony that he and Everette were present during the December 12 robbery. Although Rainly does not point to any specific comments made during closing argument, our review of the transcript reveals that the prosecutor commented that (1) Everette had said that she gave items to robbers in the earlier incident because she understood why people would hold up a video store that time of year, and (2) when Peterson told an officer that Everette had nothing to do with the December 18, 2007 robbery, the officer asked him if he thought it suspicious that Everette was "held up" six days earlier.

The admission of evidence lies within the sound discretion of the trial court, and we will not reverse such determinations absent abuse of that discretion.[8] Rainly has shown no abuse of discretion. The evidence of which Rainly complains and statements related thereto did not constitute evidence of or statements concerning similar transactions which the state sought to use against *him.* The state did not suggest, nor could it be reasonably inferred from the evidence, that *Rainly* was implicated in any way in the prior robbery. Adherence to USCR 31.1 and 31.3 was not required because that evidence and those statements did not place his character in issue.[9]

3. Rainly contends that he received ineffective assistance of counsel in that his attorney failed to make a motion in limine to exclude evidence of the prior robbery.

To prevail on his claim of ineffective assistance of counsel, Rainly must show both deficient performance and actual prejudice stemming from that deficiency.[10] In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[11]

As discussed in Division 2, Rainly was not implicated in the prior

---

[8] *Wright v. State*, 302 Ga. App. 101, 104 (3) (690 SE2d 220) (2010).

[9] See *Ealy v. State*, 203 Ga. App. 219, 220-221 (1) (416 SE2d 559) (1992).

[10] See *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

[11] *Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010).

robbery. Accordingly, he did not establish a reasonable probability that, but for counsel's alleged error, the outcome of his trial would have been different.[12]

## Case No. A10A1258

4. Everette contends that the state failed to prove its case beyond a reasonable doubt. Specifically, she argues that the evidence was insufficient to support her aggravated assault convictions and her theft by receiving stolen property conviction.

(a) Everette argues that her aggravated assault convictions cannot stand because there was no evidence that she, personally or as a party to a crime, pointed a gun at the store clerk or that either the store clerk or the store manager was in reasonable apprehension of immediately receiving a violent injury.[13]

Even though there was no evidence that Everette was inside the store or actually used a weapon during the incident, there was evidence that she owned the handgun used in the robbery, participated in the planning of the robbery, drove the car (with the other defendants and stolen merchandise inside) from the scene immediately after the robbery, and was in her apartment with the other defendants, hiding, when police arrived shortly after the robbery. There was also evidence that property taken during the robbery was found in Everette's car and in her apartment. Peterson's use of a weapon during the robbery thus can be attributed to Everette because one who intentionally aids or abets the commission of a crime by another is a party to the crime and equally guilty with the principal.[14] Reasonable apprehension of injury can be proved by circumstantial or indirect evidence as well as by direct or positive evidence; indeed, the presence of a gun would normally place a victim in reasonable apprehension of being injured violently.[15] There was testimony that one of the robbers, while making certain demands, pointed a gun at the store manager and at the clerk during the incident. The evidence was sufficient to authorize a rational trier of fact to find Everette guilty beyond a reasonable doubt as a party to the crimes of aggravated assault as to both store employees.[16]

(b) Everette asserts that the evidence was insufficient as to the theft by receiving stolen property (a Glock handgun) because the state failed to prove that she knew or should have known the

---

[12] See id. at 538 (2); *Phillips v. State*, 285 Ga. 213, 223 (5) (k) (675 SE2d 1) (2009).

[13] See OCGA § 16-5-21.

[14] *Robinson*, supra; *Mason*, supra.

[15] *Willingham*, supra.

[16] See *Lucky v. State*, 286 Ga. 478, 480 (1) (689 SE2d 825) (2010); *Willingham*, supra at 578-579; *Serchion*, supra.

handgun was stolen. We agree.

A person commits the offense of theft by receiving stolen property when she receives, disposes of, or retains stolen property which she knows or should know was stolen.[17]

> Knowledge that goods are stolen is an essential element of the crime of receiving stolen goods, and this knowledge on the part of the accused must be proved; but it may be inferred from circumstances, where the circumstances would excite suspicion in the minds of ordinarily prudent persons.[18]

The state presented evidence that the Glock handgun found in Everette's apartment had been reported stolen in November 2007. The state asserts that it proved beyond a reasonable doubt that Everette should have known that the handgun had been stolen because, according to Peterson, she had bought it for $150 or $175 from "[s]ome guy on the street." A police officer testified that he had purchased two new Glock handguns for $400 and $550 several years before trial, and that the value of such handguns decreases once they are fired. No evidence was presented as to the age of the handgun purchased by Everette or whether it had been fired. There was no evidence that, at the time she bought it, the handgun was worth the amounts the officer testified he had paid for new Glock handguns,[19] or that there was such a gross disparity between the value of the handgun and the price Everette paid for it as to excite suspicion.[20] That Everette purchased the handgun "on the street" does not prove knowledge that it was stolen.[21] The evidence presented was insufficient to sustain a conviction for theft by receiving stolen property,[22] and the conviction must be reversed.

(c) Although she has made no arguments regarding the other

---

[17] OCGA § 16-8-7 (a).

[18] *Martin v. State*, 300 Ga. App. 39, 40 (1) (684 SE2d 111) (2009) (citations and punctuation omitted).

[19] *In the Interest of J. L.*, 306 Ga. App. 89 (701 SE2d 564) (2010) (absent evidence of real value of motorcycle at time of purchase, evidence was insufficient to support finding beyond reasonable doubt that price paid was grossly disproportionate to its value and that defendant had guilty knowledge).

[20] See *Brown v. State*, 265 Ga. App. 613, 614 (1) (594 SE2d 770) (2004) (buying at a price grossly less than the real value is a sufficient circumstance to excite suspicion).

[21] *White v. State*, 283 Ga. 566, 568 (2) (662 SE2d 131) (2008) (evidence that defendant purchased handgun "off the street" and that the words "Memphis Police Department" were engraved on the handle, was not sufficient to support theft by receiving conviction).

[22] *Thomas v. State*, 270 Ga. App. 181, 182 (1) (b) (606 SE2d 275) (2004) (evidence that defendant bought gun for $120 from a stranger was insufficient to support theft by receiving conviction).

convictions, a rational trier of fact was authorized to find Everette guilty beyond a reasonable doubt of committing the offenses of armed robbery upon the store manager, possession of a firearm during the commission of a felony and possession of marijuana with intent to distribute, as charged in the indictment.[23]

5. Everette's contention that the court erred in permitting testimony and argument about the prior robbery presents no basis for reversal.

> When one is on trial charged with the commission of a crime, proof of a distinct, independent and separate offense is never admissible, unless there is some logical connection between the two, from which it can be said that proof of the one tends to establish the other. This is the general rule, but there are some exceptions to it, as when the extraneous crime forms part of the res gestae . . . or may bear upon the question of the identity of the accused, or articles connected with the offense[.][24]

As a general rule, circumstances connected with a defendant's arrest are admissible in evidence.[25] However, the evidence must be shown to be relevant; circumstances surrounding the arrest should not be admitted if they are wholly unrelated to the charged crime, are remote in time from the charged crime, or are not otherwise shown to be relevant.[26] The circumstances surrounding an arrest are admissible, if relevant, even if such circumstances incidentally place the defendant's character in issue.[27] Proper res gestae evidence may be admitted without having to follow the rules regarding prior similar transactions.[28]

The officers entered Everette's apartment shortly after the December 18, 2007 robbery occurred, and arrested the defendants. While they were in the process of making the arrests, the officers found, among other items, an officer's business card containing information relating to the earlier robbery of the video store. The store clerk testified that the business card, which officers had discovered inside the pocket of a jacket found in Everette's apart-

---

[23] Everette was charged in Count 1 with the armed robbery of the store manager. See OCGA § 16-8-41. In Count 7, Everette was charged with possession of a firearm during the commission of a felony (aggravated assault). See OCGA § 16-11-106. In Count 8, she was charged with possession of marijuana with intent to distribute. See OCGA § 16-13-30 (j).

[24] *State v. Luke*, 232 Ga. 815, 816 (209 SE2d 165) (1974).

[25] *Nichols v. State*, 282 Ga. 401, 403 (2) (651 SE2d 15) (2007).

[26] Id.

[27] Id.

[28] *White v. State*, 282 Ga. App. 286, 288 (2) (638 SE2d 426) (2006).

ment — along with other items that had been in the clerk's wallet when the wallet was stolen during the December 18, 2007 incident — looked like the business card he received during the investigation of the earlier robbery and then confirmed that it was one of the items stolen from him on December 18, 2007. Thus, the business card was an article taken during the December 18, 2007 robbery and recovered during the search of Everette's apartment. It was admissible because it was relevant to the identity of the accused and was an article connected with the charged offense.[29] Evidence relating to the first crime was not wholly unrelated to the charged crimes, nor was it so remote in time as to make it inadmissible.[30]

Therefore, the trial court did not err in allowing testimony and statements regarding the December 18, 2007 taking and recovery of the business card. Specifically, there was no error in the store clerk testifying that the police officer gave him a business card concerning a robbery of the store the week before, that the card was taken from him during the December 18, 2007 robbery, and that the card recovered by police and introduced into evidence at trial appeared to be or was the card the officer had given him. Likewise, there was no error in admitting testimony from the officer that he gave the store clerk a business card during the investigation of the prior robbery and that such a card was recovered during a search of Everette's apartment shortly after the charged robbery occurred. Such testimony did not implicate any of the defendants in the prior robbery; instead, it identified them as being connected to the charged crimes. To the extent the testimony and argument went beyond identifying the business card as an article taken in the December 18, 2007 robbery, it was not relevant and was improperly permitted.

But the error does not require reversal in this case. Here, there was overwhelming evidence of Everette's guilt, including the trial testimony of Peterson and the statements of Everette and her co-defendants before trial, as well as physical evidence recovered from her apartment and car shortly after the crimes occurred; and there was police testimony that Everette was considered a victim rather than a suspect in the prior robbery. Given the strength of the state's case against Everette, any error in the admission of the testimony and statements was harmless.[31]

6. Everette has not shown that trial counsel was ineffective based on counsel's failure to timely object to the prosecutor's

---

[29] See *Luke*, supra.

[30] Compare *Nichols*, supra at 404 (2); *Saxton v. State*, 300 Ga. App. 535, 536-537 (2) (a) (685 SE2d 780) (2009).

[31] See *Inman v. State*, 281 Ga. 67, 71 (3) (c) (635 SE2d 125) (2006); *Cartledge v. State*, 285 Ga. App. 145, 149 (3) (645 SE2d 633) (2007); compare *Saxton*, supra at 537 (2) (b).

argument regarding the prior robbery. Everette has not indicated in her brief what comment was made or on which page(s) in the record the comment can be found. It is not the function of this court to cull the record in search of error.[32] As a general rule, closing argument is appropriate as long as it is based on evidence that is properly before the jury.[33] As discussed in Division 5, evidence concerning the business card and some limited reference to the prior robbery was admissible insofar as it was relevant to the charged offenses. While some of the evidence exceeded those limits, the evidence of Everette's guilt was overwhelming. Thus, she has failed to show that, even if counsel were deficient for not objecting to such argument, she was prejudiced.[34]

7. Everette contends that the trial court erred in denying her motion for new trial on the ground that the prosecutor presented evidence and argument in the presence of the jury regarding the impact of the armed robbery on the store manager's life.[35] The prosecutor asked the store manager whether she had altered her lifestyle in any way after the robbery, to which she responded, "Yes." The prosecutor then asked the manager how her life was different after the robbery. Before the witness replied, Robinson's counsel objected. In response to the objection the prosecutor remarked, with the jury present, "[i]t's a traumatic event, and I think she's eligible to explain to the jury that it's altered her life." The objection was sustained. Considering the strength of the evidence against Everette, the fact that the objection was sustained, and the fact that the testimony on the issue was not developed, it is not likely that the testimony and remark engendered strong sympathy for the store manager or prejudiced Everette. Therefore, any error in this regard was harmless beyond a reasonable doubt.[36]

8. Everette contends that the trial court erred by denying her motion for new trial on the ground that the prosecutor improperly disparaged trial counsel during closing argument. She points to this remark by the prosecutor: "When I was a kid I used to love magic. One of the neat things about magic was it was always about misdirection. Earlier you heard a lot of misdirection. What you need

---

[32] *Lewis v. State*, 245 Ga. App. 234, 235 (2) (537 SE2d 111) (2000).

[33] *Smith v. State*, 284 Ga. 599, 602 (2) (a) (669 SE2d 98) (2008).

[34] See *Bridges*, supra at 540 (6); *Harris v. State*, 279 Ga. 522, 527 (3) (615 SE2d 532) (2005).

[35] See generally OCGA § 17-10-1.2 (a) (3), which provides, in relevant part, that the court shall allow evidence of the impact of the crime upon the victim. This evidence is only admissible during the sentencing phase of the trial. *Taylor v. State*, 264 Ga. App. 665, 669 (5) (592 SE2d 148) (2003).

[36] See *Keita v. State*, 285 Ga. 767, 771 (3) (684 SE2d 233); *Walker v. State*, 282 Ga. 774, 777 (5) (653 SE2d 439) (2007).

to focus on is the evidence and on the truth."

> Counsel enjoys very wide latitude in closing arguments, and may make use of . . . illustrations, so long as he does not make extrinsic or prejudicial statements that have no basis in the evidence. Counsel's illustrations during closing argument may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination.[37]

"Closing arguments are judged in the context in which they are made."[38]

Before the prosecutor made the statement at issue, Rainly's trial counsel had described Peterson as "the star" of the "show," told of how Rainly met Peterson "years earlier" while in the custody of the Department of Family & Children Services ("DFCS"), and spoke about why children end up in DFCS's custody, the parenting skills of Peterson's parents, and how the world in which the defendants lived differed from the world in which counsel and the jurors lived. Then, counsel for Everette had said the prosecutor wanted the jury "to just reach for straws and pull something out of the air," and urged the jury to watch as the prosecutor tried to "massage . . . things" and try to "make something out of nothing."

When viewed in the context in which it was made, the prosecutor's argument referencing magic and misdirection and request that the jury focus on the evidence did not exceed the wide latitude permitted in closing argument.[39] The trial court did not abuse its discretion in permitting the argument.[40] Everette's related contention that counsel's performance was deficient because he failed to object to the argument is also without merit.[41]

### Case No. A10A1259

9. Robinson complains that the trial court erred in allowing the state to present evidence of a similar transaction, namely the prior robbery, without requiring notice and a hearing as mandated by USCR 31.1 and 31.3 (B). He adds that the evidence placed his

---

[37] *Duffy v. State*, 271 Ga. App. 668, 670 (2) (610 SE2d 620) (2005) (citation omitted).

[38] *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008) (citation omitted).

[39] See generally *Smith v. State*, 284 Ga. 599, 602 (2) (a) (669 SE2d 98) (2008).

[40] Id.

[41] See generally *Wesley v. State*, 286 Ga. 355, 356 (3) (b) (689 SE2d 280) (2010); *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008).

character at issue by suggesting that he had the propensity to rob video stores and to associate with people of bad character. No such notice and hearing were required because evidence regarding the prior robbery did not place Robinson's character in issue.[42] The testimony in question did not suggest his involvement in the commission of another, independent offense. Further, even if we were to find error in this regard, such error would be harmless because the evidence of Robinson's guilt was overwhelming and thus it is highly probable that allowing testimony about the earlier robbery did not contribute to the verdict.[43]

10. Robinson's contention that the trial court erred by allowing evidence pertaining to the impact the crimes had on the store manager during the guilt-innocence phase of the trial presents no basis for reversal. Given the strength of the evidence against Robinson, the fact that the court sustained the objection, and the fact that the impact testimony was not developed, it is not likely that the evidence engendered strong sympathy for the store manager or prejudiced Robinson. Thus, any error in this regard was harmless beyond a reasonable doubt.[44]

11. Robinson contends that the trial court erred in failing to give his requested charges on robbery or conspiracy to commit robbery as lesser offenses of armed robbery. He avers that the charges were authorized because there was some evidence that he did not know a weapon would be used in the robbery. To support his argument, Robinson cites Peterson's statement to officers at the time of his arrest that Robinson knew nothing about any gun that was found on the premises and Peterson's testimony that the gun was concealed in his pocket when he entered the store and he was the only person who touched the gun during the robbery.

> [W]here the state's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense. Where a case contains some evidence, no matter slight, that shows that the defendant committed a lesser offense, then the court should charge the jury on that offense.[45]

The trial court did not err in failing to give a jury charge on the

---

[42] See *Ealy*, supra.

[43] See *Moore v. State*, 301 Ga. App. 220, 225 (3) (687 SE2d 259) (2010).

[44] See *Keita*, supra; *Walker*, supra.

[45] *Maiorano v. State*, 294 Ga. App. 726, 728 (2) (669 SE2d 678) (2008) (citation and emphasis omitted).

lesser offense of robbery.[46] The evidence was uncontradicted that the video store was robbed at gunpoint. A gun was used to effectuate the robbery, the gun was brandished throughout the incident and Robinson participated in the robbery while the gun was being used to accomplish the robbery. And when officers asked Robinson upon his arrest what had happened, he admitted that he went with Peterson to the video store and that Peterson had carried a gun. Peterson's testimony that the gun was concealed when he entered the store and that Robinson had not touched the gun during the robbery, and the officer's testimony that Peterson said that Robinson knew nothing about the gun found in the apartment after the robbery was not evidence that a weapon was not used in the robbery. In fact, there was no evidence to support a jury finding that a weapon was *not* used to accomplish the robbery,[47] even if the jury believed Robinson's version of the facts — that he intended only robbery and that the use of the weapon was not naturally or necessarily done in furtherance of the conspiracy to commit robbery.[48] The court was not required to give a charge on the lesser offense of robbery where uncontroverted evidence showed completion of the offense of armed robbery.[49] Robinson's request to charge was not authorized by the evidence and the trial court did not err in denying it.[50] Moreover, in light of the overwhelming evidence against Robinson, it is highly probable that the failure to give the lesser charge did not contribute to the verdicts.[51]

The trial court also properly denied giving a charge on conspiracy to commit robbery as a lesser offense of armed robbery. Where the evidence showed that the crime charged was completed, the failure to charge on conspiracy was not error; this is because if the crime charged has been committed, the co-conspirators are guilty as parties to the commission of a crime.[52]

*Judgments affirmed in Case Nos. A10A1257 and A10A1259.*

---

[46] OCGA § 16-8-40 (a) provides that a person commits the offense of robbery when, with intent to commit theft, he takes the property of another from the person or the immediate presence of another by use of force, by intimidation (by use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another) or by sudden snatching. OCGA § 16-8-41 (a) provides, in pertinent part, that a person commits the offense of armed robbery when, with intent to commit theft, he takes the property of another from the person or the immediate presence of another by use of an offensive weapon.

[47] Compare *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994).

[48] See *Martin v. State*, 213 Ga. App. 146, 147 (444 SE2d 103) (1994).

[49] Id.; see generally *Clark v. State*, 279 Ga. 243, 247 (7) (611 SE2d 38) (2005); *Carter v. State*, 257 Ga. App. 620, 622 (1) (571 SE2d 831) (2002).

[50] See *Martin*, supra.

[51] See *Edwards*, supra.

[52] *Gunter v. State*, 243 Ga. 651, 660 (6) (256 SE2d 341) (1979); *Granados v. State*, 244 Ga. App. 153, 154 (3) (534 SE2d 886) (2000).

*Judgment affirmed in part and reversed in part in Case No. A10A1258. Miller, C. J., and Johnson, J., concur.*

DECIDED NOVEMBER 30, 2010 —
RECONSIDERATION DENIED DECEMBER 16, 2010.

*Clark & Towne, Jessica R. Towne*, for appellant (case no. A10A1257).

*Edwin J. Wilson*, for appellant (case no. A10A1258).

*Deborah R. Fluker*, for appellant (case no. A10A1259).

*Daniel J. Porter, District Attorney, Jimmie E. Baggett, Jr., Assistant District Attorney*, for appellee.