**SECOND DIVISION
BARNES, P. J.,
MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**October 25, 2013**

# In the Court of Appeals of Georgia

A13A1510. BROOKS v. THE STATE.

MILLER, Judge.

Following a jury trial, Maurice Brooks was convicted of burglary (OCGA § 16-7-1) and armed robbery (OCGA § 16-8-41 (a)). Brooks appeals from the denial of his motion for a new trial, challenging the sufficiency of the evidence and arguing that his trial counsel rendered ineffective assistance. We discern no error and affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.

(Citations and punctuation omitted.) *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007). So viewed, the evidence shows that at approximately 7:52

a.m. on June 29, 2010, the manager for the Family Dollar store on Lawrenceville Highway in Gwinnett County arrived to open the store. After she entered the store, three men who were inside the store approached her. The men wore t-shirts over their faces. One of them pointed a gun at the manager's face and told her to open the safe, which was located near the front door. The manager entered the code for the top compartment, which contained petty cash. After she gave the men the cash, they told her to enter the code for the bottom compartment, which had a ten-minute delay and contained the previous day's deposit. After she did so, a bread delivery man arrived at the store. The manager mouthed "help" to the delivery man, who returned to his truck, called a colleague, and asked him to call 911. When the men got the deposit money, they put it in a bag and ran toward the back of the store.

Detective Seth Bailey and one his colleagues were among the officers who responded to the scene. Bailey learned from other officers that a robbery had occurred and that three black males had fled through the rear of the store. Bailey and his colleague drove around to a road that runs through a residential area and comes up behind the store. While they were driving, Bailey saw a house with a shed and observed a black male, later identified as Brooks, standing near the shed with some bags and looking through one of them. Brooks appeared nervous when he saw the

2

officers and started to walk off. The officers told him to stop, but Brooks ran behind the house and down toward a creek bed. As the officers followed, they found a bag similar to the ones by the shed. Bailey heard his colleague shout, "police, don't move," and saw him pointing a gun at Brooks, who was in the creek. Brooks was the taken into custody.

After Brooks was apprehended, the lead investigator on the case remarked to some other officers that he wondered where the others were. The lead investigator was standing about six feet from Brooks, with his back to him. Brooks stated, "I don't know where the other two went. I guess they left me." The lead investigator directed another officer to take control of Brooks, and while the officer was conducting a pat down search of Brooks, Brooks stated that "he took the stuff so that he could pay his bills."

The bags found in Brooks's vicinity consisted of six cooler totes containing approximately $700 in merchandise from the Family Dollar and a plastic bag containing money and the deposit slip from the store's safe. Police recovered a backpack in the same area that contained a handsaw and hatchet. A crime scene technician discovered a hole in the ceiling in the store's front office that was big enough to allow a person to get into the store. She also found and photographed a

3

shoe print in the dust on top of a cooler that was similar to the tread on the shoes Brooks was wearing when apprehended. Video from the store's surveillance system was played and introduced into evidence at trial. The video showed that one of the three men was wearing jeans that had a distinctive pattern on the back pockets that was similar to that on the jeans Brooks was wearing when he was apprehended.

1. Brooks challenges the sufficiency of the evidence, contending that the only evidence linking him to the crimes were his jeans with distinctive back pockets. This argument ignores a host of other relevant evidence. Notably, Brooks made incriminating statements that he took the "stuff" to pay his bills and that he did not know "where the other two were." When police encountered Brooks in close proximity to the Family Dollar shortly after the crimes standing near bags containing the stolen cash and merchandise and looking in one of them, he was nervous and fled from the officers. See *Shaheed v. State*, 245 Ga. App. 754, 755 (1) (538 SE2d 823) (2000) (flight is circumstantial evidence of consciousness of guilt, and the weight to be given to such evidence is for jury to decide). In the same area as the bags, police recovered a backpack containing a handsaw and hatchet. The crime scene investigator photographed shoe print on a cooler in the store appearing to match the shoe tread on Brooks's shoes. We conclude that the evidence was sufficient for a jury to find

4

Brooks guilty beyond a reasonable doubt of armed robbery and burglary. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Brooks argues that he received ineffective assistance from his trial counsel. "To establish an ineffective assistance of counsel claim, the defendant must show that counsel's performance was deficient and the deficient performance prejudiced the defense." (Citations omitted.) *Bright v. State*, 292 Ga. 273, 274 (2) (736 SE2d 380) (2013). In reviewing a trial court's ruling on an ineffective assistance claim, we accept the trial court's factual findings and credibility determinations unless clearly erroneous but independently apply the legal principles to the facts. *Holloman v. State*, 293 Ga. 151, 154 (4) (744 SE2d 59) (2013).

a. Brooks contends that his trial counsel was ineffective because he failed to file a motion to suppress evidence resulting from Brooks's arrest. When a failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion. *Rivers v. State*, 283 Ga. 1, 5 (3) (b) (655 SE2d 594) (2008).

Brooks argues that a motion to suppress would have required the State to prove that police had probable cause to arrest him. Detective Bailey, who arrived on the

scene in response to a robbery in progress call, testified that he learned from other officers that three black males involved in the robbery had fled toward the rear of the business. Shortly thereafter, Bailey and his colleague encountered Brooks standing by a shed in a neighborhood behind the Family Dollar store. Brooks was standing by some bags and looking through one of them, and he appeared nervous and tried to walk off when he saw the officers. At that point, police had, at a minimum, an articulable suspicion that Brooks committed the crimes and were authorized to stop him for questioning. *Anderson v. State*, 265 Ga. App. 428, 433 (4) (594 SE2d 669) (2004); *Freeman v. State*, 248 Ga. App. 363, 364-365 (1) (548 SE2d 616) (2001). When officers told Brooks to stop, he ran, and in pursuing him, police found a bag similar to the ones by the shed. "Probable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances. Flight in connection with other circumstances may be sufficient probable cause to uphold a warrantless arrest." (Footnote and punctuation omitted.) *Adams v. State*, 263 Ga. App. 694, 695 (1) (589 SE2d 269) (2003). Here, Bailey's testimony regarding Brooks's flight and the other circumstances preceding his arrest established probable cause. Although Brooks argues that had his trial counsel filed a motion to suppress, Bailey's colleague, who apprehended Brooks in the creek bed, would have been

required to testify at the motion to suppress hearing , Brooks did not call this officer as a witness at the motion for new trial hearing. Given this omission and Bailey's testimony, Brooks failed to make a strong showing that a motion to suppress would have been granted. See *Parnell v. State*, 280 Ga. App. 665, 671 (2) (b) (634 SE2d 763) (2006) (appellant failed to show motion to suppress drugs discovered during pat down would have been granted in light of account of officer who observed pat down and appellant's failure to call the officer who conducted the pat down as a witness at the motion for new trial hearing).

b. Brooks argues that his trial counsel was ineffective because he failed to request a *Jackson-Denno* hearing prior to trial as to the admissibility of his statement, overheard by the lead investigator, that "I don't know where the other two went. I guess they left me," and failed to object when the prosecutor referred to that statement in her opening statement. The trial court, however, held a *Jackson-Denno* hearing regarding the statement before the lead investigator testified at trial and ruled that the statement was admissible, as it was voluntary and not the product of custodial interrogation. Consequently, Brooks cannot establish ineffective assistance on this ground. See *Cuvas v. State*, 306 Ga. App. 679, 681 (1) (b) (703 SE2d 116) (2010).

7

c. Brooks contends that his trial counsel was ineffective in failing to timely object during closing argument when the prosecutor made statements of prejudicial matters not in evidence, contrary to OCGA § 17-8-75.

The record reflects that during closing argument, defense counsel, in arguing that jurors could find a reasonable doubt as to Brooks's guilt, urged them to consider the State's inability to produce certain evidence, such as the gun used or the gloves worn during the robbery; the State's failure to conduct a line-up; and the State's failure to process the crime scene or items recovered by police for certain forensic evidence. Defense counsel also pointed out that the label on an evidence bag tendered into evidence by the State referred to Dollar General instead of Family Dollar. In her closing argument, the prosecutor argued that the reference to Dollar General on the evidence bag was simply a mistake and that pointing it out "was just nothing but smoke and mirrors to distract you from what's really going on." Before proceeding to a point-by-point rebuttal of defense counsel's recitation of purported deficiencies in the State's case, the prosecutor commented, "I would submit to you again that that's nothing more than smoke and mirrors, just like the Family Dollar versus Dollar General[.]" The prosecutor concluded her rebuttal by stating: "It's easy to throw all of these 'they should have done this, should have done that' out there to try to

8

confuse you, to try to muddy the water, but the picture is actually pretty clear."

Brooks's trial counsel did not assert a contemporaneous objection to the prosecutor's comments but instead moved for a mistrial at the conclusion of closing arguments. The trial court denied the motion, finding that any objection was waived and that the prosecutor's use of metaphors was not improper.

"Closing arguments are judged in the context in which they are made." *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008).

> Counsel enjoys very wide latitude in closing arguments, and may make use of illustrations, so long as he does not make extrinsic or prejudicial statements that have no basis in the evidence. Counsel's illustrations . . . may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination.

(Footnote and punctuation omitted.) *Rainly v. State*, 307 Ga. App. 467, 478 (8) (705 SE2d 246) (2010).

Viewed in context, the prosecutor used the challenged metaphors in her effort to refute the significance of the purported evidentiary deficiencies cited by the defense. The trial court, in ruling on the untimely motion for mistrial, ruled that the remarks constituted fair oratory, and we find no abuse of discretion in this regard. See *Coghlan v. State*, 319 Ga. App. 551, 555-556 (2) (a) (737 SE2d 332) (2013) (trial

9

court did not abuse discretion by allowing prosecutor to argue that defense counsel had used a "smoke and mirrors" strategy); *Rainly*, supra, 307 Ga. App. at 477-478 (8) (trial court did not abuse discretion in allowing prosecutor to state that defense counsel had engaged in "magic" and "misdirection" and that jury should focus on the evidence and the truth). Since the prosecutor's arguments were permissible, "trial counsel's failure to object . . . cannot serve as the basis for an ineffective assistance claim." (Citations omitted.) *Herndon v. State*, 309 Ga. App. 403, 406 (1) (710 SE2d 607) (2011).

d. Finally, Brooks argues that he received ineffective assistance from his trial counsel in connection with the State's plea offer.

On the first day of trial, the prosecutor stated for the record that the State had extended a plea offer to Brooks under which it would recommend a sentence of 20 years, 12 to be served in prison, if Brooks pled guilty, but Brooks rejected the offer. Brooks maintains that his trial counsel rendered ineffective assistance in connection with the plea offer because he did not show Brooks the surveillance video from the Family Dollar store prior to trial. At the motion for new trial hearing, trial counsel admitted that he did not show the video to Brooks, but he testified that he discussed the video and its contents with Brooks. Trial counsel testified that he told Brooks that,

10

while the video was little blurry, the final scene showed the perpetrators exiting through the back door and the distinctive stitching on the third person's jeans. Trial counsel also testified that he had several discussions with Brooks regarding the State's offer; he discussed the discovery and evidence with Brooks; he informed Brooks of the potential sentences he faced; he reviewed all of the defenses with Brooks; and Brooks decided to proceed to trial. Although Brooks provided conflicting testimony regarding what his trial counsel told him about the surveillance video , the trial court was entitled to credit trial counsel's testimony over Brooks's. See *McDaniel v. State*, 279 Ga. 801, 802 (2) (a) (621 SE2d 424) (2005). Trial counsel's testimony was sufficient to show that he communicated the significance of the surveillance video and fulfilled his duty to provide Brooks with informed advice concerning the plea offer. See *Cammer v. Walker*, 290 Ga. 251, 255 (2) (719 SE2d 437) (2011) (duty to provide informed legal advice includes discussing risks of going to trial, the evidence against the accused, and differences in possible sentences that would be imposed following a guilty plea and a conviction at trial).

Brooks also maintains that after he saw the surveillance video at trial, he told his trial counsel that he wanted to change his plea, but his trial counsel never communicated his desire to the prosecutor. At the motion for new trial hearing, trial

counsel testified that Brooks did not tell him he wanted to change his plea after viewing the video and that had Brooks done so, he would have spoken to the prosecutor. Again, the trial court was authorized to credit trial counsel's testimony over Brooks's account, *McDaniel*, supra, 279 Ga. at 802 (2) (a), and as such, the trial court did not err in concluding that Brooks failed to establish that trial counsel performed deficiently.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

12